**Dennis Paul KEENER and Marian J. Keener, his wife, Plaintiffs,**

v.

**DEPARTMENT OF THE ARMY, United States of America and United States of America, Defendants.**

**Civ. No. 79–1201.**

United States District Court, M. D. Pennsylvania.

Oct. 15, 1980.

James B. Pannebaker, Middletown, Pa., for plaintiffs.

J. Andrew Smyser, Asst. U. S. Atty., Harrisburg, Pa., for defendants.

---

## OPINION

MUIR, District Judge.

### I. Introduction.

The Keeners bring this action pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671 et seq., and invoke the Court's jurisdiction under 28 U.S.C. § 1346(b) seeking to recover damages for injuries caused by a motor vehicle accident between Plaintiffs' vehicle driven by Mr. Keener and a vehicle owned by the United States and driven by Army Sergeant Robert Alan Ludwig. The accident occurred shortly after midnight on December 17, 1976. The issue whether Sergeant Ludwig was acting within the scope of his employment at the time of the accident was tried to the Court without a jury separately pursuant to Fed.R. Civ.P. 42(b) on September 25 and September 26, 1980. The following constitute the Court's findings of fact, discussion and conclusions of law with respect to that issue.

### II. Findings of Fact.

1. Plaintiff Dennis Paul Keener is an adult individual who resides at 107 Bunker Hill Road, R.D. # 2, New Cumberland, Pennsylvania, within the jurisdiction of this Court. (Undisputed, hereinafter U).

2. Plaintiff Marian J. Keener, is the wife of Dennis Paul Keener and is an adult individual who resides at 107 Bunker Hill Road, R.D. # 2, New Cumberland, Pennsylvania. (U)

3. Defendant Department of the Army, United States of America, is a military department of the Defendant, United States of America. (U)

4. Robert Alan Ludwig is and was at all times relevant to this action a sergeant in the United States Army on active duty.

5. Dennis P. Keener, on December 16, 1976, was employed by the U.S. Army at the New Cumberland Army Depot, New Cumberland, Pennsylvania, as a civilian employee. (U)

6. On December 16, 1976, Dennis P. Keener worked at the U.S. Army Depot at New Cumberland and left his job for home after the night shift at approximately 12:00 midnight. (U)

7. On December 17, 1976, at approximately 12:05 A.M. Dennis P. Keener was driving his 1976 Honda automobile owned jointly by him and his wife on his way home from work. (U)

8. On December 17, 1976, shortly after 12:00 midnight, the weather was clear and the roadway was dry. (U)

9. On December 17, 1976, shortly after 12:00 midnight, Dennis P. Keener was driving in a westerly direction on Pennsylvania Route 114, in Fairview Township, York County, Pennsylvania. (U)

10. In December 1976 Sergeant Robert Alan Ludwig was an Army Recruiter stationed in Chambersburg, Pennsylvania. (U)

11. In his capacity as an Army Recruiter Robert Alan Ludwig was ordered by Temporary Duty (TDY) orders to attend a two-day recruiting seminar sponsored by the Department of the Army on December 16 and 17, 1976 at the Sheraton Motor Lodge, New Cumberland, Pennsylvania.

12. Robert Alan Ludwig's TDY orders read that he was to go from Chambersburg to Harrisburg and return, with variation authorized.

13. Department of Defense joint travel regulations provide that:

4. VARIATION IN ITINERARY. Travel orders may include authorization for variation in itinerary so as to permit:

1. omission of travel to places stated in the travel order,

2. changes in the order of continuity of places shown,

3. changes in the original specified time duration at a place stated in the travel order,

4. travel to additional places not shown in the travel order. (U)

14. Robert Alan Ludwig's written official travel authorization did not specify how many meals he should eat a day or where he should eat. (U)

15. In connection with his temporary duty assignment to the professional development seminar at the Sheraton Motor Inn, New Cumberland, Pennsylvania, Sergeant Robert Alan Ludwig was authorized to use a United States Government vehicle for the purpose of obtaining meals at locations other than the Sheraton Motor Inn.

16. Robert Alan Ludwig was authorized a per diem allowance for room and meals of $46.00 per day. (U)

17. After paying for his room at the Sheraton, Sergeant Ludwig had approximately $29.00 in per diem expense allowance money available to him, to apply towards food from noon on Thursday, December 16, 1976 to noon or shortly thereafter on December 17, 1976 when the seminar concluded.

18. Charles E. Hartz and Ronald G. Nonnemacher were Army sergeants and were attending the recruiter's seminar at the Sheraton Motor Lodge on December 16 and 17, 1976. (U)

19. On the evening of December 16, 1976, Robert Alan Ludwig was ordered to attend a banquet provided by his recruiting command at the Sheraton Motor Lodge.

20. The New Cumberland Army Depot is located approximately 3.4 miles from the Sheraton Motor Inn. (U)

21. On December 16, 1976 the first day of the recruiting seminar attended by Sergeant Ludwig, a group of recruiters at the seminar were addressed by Colonel Joseph R. Clelan concerning the operation of Government vehicles generally and specifically the use of vehicles during the course of the seminar. Among other things, the recruiters were told not to drive after drinking, to leave the vehicles parked during the course of the seminar and not to leave the seminar in Government vehicles throughout the course of the seminar.

22. Sergeant Ludwig was not present when Colonel Clelan made the comments summarized above.

23. The awards banquet on the night of December 16, 1976 began at approximately 6:00 P.M. and was still in progress when SSGs Ludwig, Hartz and Nonnemacher left the Sheraton.

24. A free meal was provided to Sergeant Ludwig at the awards banquet.

25. During and after the awards banquet on the evening of December 16, 1976, Sergeant Ludwig drank three beers.

26. Sergeant Ludwig did not know whether he could obtain something to eat at the Sheraton Motor Inn when he left there close to midnight on December 16, 1976.

27. Sergeant Ludwig could have obtained at the Sheraton one or more of a variety of hot and cold food items.

28. Sergeant Ludwig believed he could obtain something to eat at the NCO Club at the New Cumberland Army Depot when he left the Sheraton shortly before midnight on December 16, 1976.

29. On December 16, 1976, shortly before midnight, Robert Alan Ludwig left the Sheraton Motor Lodge in Cumberland County in the company of Charles E. Hartz and Ronald G. Nonnemacher. (U)

30. Shortly after midnight of December 17, 1976 the vehicle driven by Sergeant Ludwig and the vehicle driven by Dennis P. Keener collided on Route 114, Fairview Township, York County, Pennsylvania.

31. At the time the accident occurred on December 17, 1976, Sergeant Ludwig was on duty with the United States Army.

32. At the time of the accident on December 17, 1976, Sergeant Robert Alan Ludwig was on his way to the New Cumberland Army Depot NCO Club to get something to eat.

33. During the time when Sergeants Robert Alan Ludwig, Charles E. Hartz and Ronald G. Nonnemacher were on their way to the NCO Club, New Cumberland Army Depot, New Cumberland, Pennsylvania,

they talked "shop" concerning different aspects of their recruiting experience.

34. At the time the accident occurred on December 17, 1976 Sergeant Robert Alan Ludwig was wearing civilian clothing because he had been directed by his commanding officer to wear civilian clothing to the awards dinner.

35. At the time of the accident, Robert Alan Ludwig was driving an automobile owned by the United States Government provided by the Government Motor Pool at Harrisburg, Pennsylvania, which automobile was carrying United States Government registration plates and which was also marked on the sides of the vehicle as belonging to the United States Government, being an official vehicle. The vehicle also was marked on the rear door panel "ARMY" in letters in accordance with AR 58–1. (U)

36. On December 16, 1976 and on December 17, 1976, USAREC Reg. 561, Management of Administrative Use Vehicles Section III, Paragraph 12, was in effect and provided: "12. DRIVING AFTER CONSUMPTION OF INTOXICATING BEVERAGE. No person who has consumed any intoxicating beverage within the previous 8–hour period shall operate any administrative use vehicle."

37. On December 16 and 17, 1976 SSG. Ludwig was subject to the provisions of USAREC 56–1.

38. Prior to the accident on December 17, 1976, Sergeant Ludwig was not aware of any Army or Government regulations prohibiting him from driving a government vehicle within a specified number of hours after consuming alcoholic beverages.

39. At the time of the accident, neither Sergeant Donald E. Garber, Sergeant Ludwig's office commander, nor Captain Louis Duet, Jr., the commanding officer for the Chambersburg Recruiting Office was aware of any government regulations prohibiting the operation of a government vehicle within a specified number of hours after the consumption of alcoholic beverages, nor had either Sergeant Garber or Captain Duet

counselled or instructed Sergeant Ludwig not to drive a government vehicle under such circumstances.

39. At the awards dinner held in the evening of December 16, 1976, the U.S. Army made alcoholic beverages available to the soldiers in attendance at a bar set up in the dining room.

40. Sergeant· Ludwig's commanding officers knew that the recruiters under their command had consumed alcoholic beverages at the banquet.

41. When SSG. Ludwig left the Sheraton Motor Inn on the night of December 16, 1976, he was operating a government administrative use vehicle within eight hours after consuming intoxicating beverages.

42. USAREC STANDARD OPERATING PROCEDURES, SAFETY, dated 15 March 1973, provides that for the operation of an Army vehicle after 2200 hours (10:00 P.M.) clearance by the RMS Operator or the Staff Duty NCO is required and that vehicles are not to be operated from 2400–0500 hours (midnight to 5:00 A.M.).

43. USAREC STANDARD OPERATING PROCEDURES, SAFETY, dated March 15, 1973, was in effect on December 16 and 17, 1976.

44. Sergeant Ludwig did not know of the restriction in USAREC STANDARD OPERATING PROCEDURES, SAFETY, concerning use of vehicles after 2200 hours and before 0500 hours.

45. Sergeant Ludwig operated an Army vehicle between 2200 and 2400 hours on December 16, 1976 and operated the vehicle between 2400 and 0500 hours on December 17, 1976.

46. Sergeant Ludwig did not have clearance from the RMS Operator or from the Staff Duty NCO to operate the vehicle on the night of December 16, 1976.

47. SSG. Ludwig's trip at approximately midnight on December 16, 1976 was taken for his own personal pleasure.

48. SSG. Ludwig's trip from the Sheraton Motor Inn on the night of December 16, 1976, did constitute conduct of a kind that

SSG. Ludwig had been employed to perform.

49. SSG. Ludwig's trip from the Sheraton Motor Inn on the night of December 16, 1976 was not actuated by a purpose to serve the Department of the Army.

50. SSG. Ludwig was reprimanded by his District Recruiting Commander, Col. Joseph R. Clelan, for his use of the government vehicle on the night of December 16, 1976. The written reprimand was communicated to SSG. Ludwig in the form of a letter from Col. Clelan.

51. Pursuant to the requirements of "Joint Procedures for Management of Administrative Use Motor Vehicles, AR 58–1" an investigation of the circumstances surrounding the accident and the operation of the government vehicle by Sergeant Ludwig at the time of the accident was made by his commanding officers.

52. An accident report prepared by Robert H. Novotni, Logistics Officer, and reviewed and approved by Joseph R. Clelan, Lieutenant Colonel, USAREC, New Cumberland, Pennsylvania, states that Sergeant Ludwig was on duty at the time of the accident.

53. Pursuant to the requirements of "Joint Procedures for Management of Administrative Use Motor Vehicles, AR 58–1" an investigation of the circumstances surrounding the accident and the operation of the government vehicle by Sergeant Ludwig at the time of the accident was made by his commanding officers who found that there was no indication of drugs or alcoholic beverages being present.

54. No disciplinary action was taken against Sergeant Ludwig as a result of his involvement in the accident other than the reprimand.

55. Neither the United States Army nor the United States Government assessed any financial liability for damages to the government owned vehicle against Sergeant Ludwig as a result of the accident.

56. Sergeant Ludwig's military driver's license was not revoked or suspended by the United States Army as a result of the motor vehicle accident.

57. At the time the accident occurred, Sergeant Ludwig believed that he was authorized to operate the government vehicle assigned to him for the purpose of obtaining a meal away from the Sheraton Motor Inn.

58. There was no public transportation available to Sergeant Ludwig who thus had to use his assigned government vehicle in order to leave the Sheraton Motor Inn for any purpose.

## III. Discussion.

■ The parties agree that this court is to look to Pennsylvania law to determine whether Sergeant Ludwig was acting within the scope of his employment at the time of the accident. *See Williams v. United States*, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955) (per curiam); *Simpson v. United States*, 484 F.Supp. 387 (W.D.Pa.1980). Pennsylvania has adopted § 228 of the Restatement (Second) Agency regarding scope of employment. *Winword v. Rhodewalt*, 203 Pa.Super. 369, 198 A.2d 623 (1964); *Kemerer v. United States*, 330 F.Supp. 731 (W.D.Pa.1971), *aff'd*, 474 F.2d 1338 (3d Cir. 1973) (mem.).

Section 228 provides as follows:

(1) Conduct of a servant is within the scope of employment if, but only if:

(a) It is of the kind he is employed to perform;

(b) It occurs substantially within the authorized time and space limits;

(c) It is actuated at least in part by a purpose to serve the master; . . . .

(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits or too little actuated by a purpose to serve the master.

Applying these criteria to the facts of this case, the Court concludes that Sergeant Ludwig was not acting within the scope of his employment at the time of the accident.

■■ The facts indicate that conduct in which Sergeant Ludwig was engaged, driv-

ing a Government vehicle, was of the kind he was employed to perform. In addition, but for the Army regulations concerning operating government vehicles after drinking and after 10:00 P.M. and before 5:00 A.M., Sergeant Ludwig was authorized to use the vehicle at the time of the accident and the accident occurred within an area in which he was authorized to travel. The existence of the army regulations, however, makes Sergeant Ludwig's operation of the vehicle at that time unauthorized. Because neither Sergeant Ludwig nor his immediate superiors were aware of those regulations, the Court is unwilling to rest its conclusion on that basis alone.

The most important reason why Sergeant Ludwig was not acting within the scope of his employment is that his activity at that time was not "actuated at least in part by a purpose to serve the master" but instead his conduct was "too little actuated by a purpose to serve the master." Restatement (Second) Agency § 228.

Sergeant Ludwig's trip to the NCO club at the New Cumberland Army Depot was not designed to serve any purpose of the United States Army. Sergeant Ludwig and his two companions went to the NCO club not to further their jobs as recruiters but to get something to eat. The fact that they talked shop on the way does not alter this conclusion. To the extent that a purpose of the seminar was for recruiters to exchange ideas, that purpose was to have been achieved by discussions at the site of the seminar, not in an automobile at midnight. In any event, the primary purpose of the trip was for the personal pleasure of the three sergeants and any purpose to serve the interest of the United States was "too little actuated" to impose liability.

This case is distinguishable from that of *Simpson v. United States*, 484 F.Supp. 387 (W.D.Pa.1980). The marine recruiter in that case had been ordered to engage in recruiting on a 24–hour basis in order to meet his quota. At the time of the accident, he was transporting three civilians from a local bar after he had been discussing recruiting with them. In that case, it could fairly be said that the recruiter's conduct was to serve the purpose of the United States. Such cannot be said in this case where there is no evidence that the trip by Sergeant Ludwig was motivated to engage in recruiting or to improve his recruiting skills. The trip was solely for personal pleasure.

The fact that the Army declined to punish Sergeant Ludwig or to assess him for damages to the government's car does not alter this conclusion. As Captain Duet testified, the Army did not want to "crucify an enlisted man" for violations of regulations that were unknown to SSG. Ludwig or his superior officers. The Army's disposition of the case as it concerned SSG. Ludwig does not estop the United States from asserting its defense in this action. The Court concludes that Sergeant Ludwig was not acting within the scope of his employment at the time of the accident and that the United States is not liable to the Plaintiffs. Accordingly, the Court will direct that judgment be entered dismissing the Plaintiffs' complaint.

### IV. Conclusions of Law.

1. The presence of the names of the Defendants, "United States Government" and "Army" on the vehicle operated by Sergeant Ludwig raises a rebuttable presumption or inference that the vehicle was owned by the Defendants and that the driver of the vehicle was a servant of the Defendants acting within the scope of his employment.

2. The evidence produced by the Government rebutted the inference that the vehicle was being used on government business by Sergeant Ludwig.

3. Sergeant Ludwig's destination, the NCO Club, New Cumberland Army Depot, was located approximately 3.4 miles from the Sheraton Motor Inn and was substantially within the authorized space limits set forth in his written authorization for use of the government vehicle.

4. SSG. Ludwig was expressly prohibited from using a government administrative

use vehicle to travel from the site of the professional development seminar to another location when he had consumed intoxicating beverages within the eight–hour period before the trip.

5. Sergeant Ludwig's use of the government administrative use vehicle on the night of December 16, 1976, was in violation of express directives issued previously to him by his employer, the Department of the Army.

6. Sergeant Ludwig was not acting within the scope of his employment as an Army officer when his vehicle collided with Plaintiff Dennis Keener's vehicle on December 17, 1976.

7. The doctrine of *respondeat superior* is not applicable in this case.

8. The Department of the Army and the United States of America are not liable for the alleged negligence of SSG. Ludwig.