**Raymond MAIER**

v.

**William PATTERSON, et al.**

**Civ. A. No. 77–3635.**

United States District Court,
E.D. Pennsylvania.

Dec. 1, 1982.

Harry S. Shargel, Philadelphia, Pa., for plaintiff.

Thomas W. Jennings, Sagot & Jennings, Philadelphia, Pa., for defendants Union.

Sol H. Weiss, Philadelphia, Pa., for William Patterson, defendant.

## MEMORANDUM

GILES, District Judge.

Plaintiff has moved for a new trial asserting that the court erred in granting the defendants' motions for directed verdict on Counts I, II and IV of the complaint made pursuant to Rule 50(a), Fed.R.Civ.P. For the reasons which follow, plaintiff's motions are denied.

## I. BACKGROUND

Raymond Maier, member in good standing of Local 107 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America ("Union"), sued the Union and its business agent, William Patterson. Patterson was sued in his official and individual capacities because in the course of a meeting on February 20, 1977, with some Union members who were disgruntled about their lay-off status, he became embroiled in a verbal exchange with plaintiff Maier. An altercation erupted between them. As a result of assault and battery by Patterson, Maier sustained personal injuries for which he sought recompense before a jury.

The lay-offs, including plaintiff's, had been effectuated in strict accord with the seniority and work reduction provisions of the collective bargaining agreement with the employer, Owens-Illinois. (Maier, N.T. 52). Maier asked Patterson about the possibility of jobs at a different company, the Lily Tulip Company, which apparently was using its own trucks for hauling purposes. Patterson replied that there was nothing he could do about it except that the Union had filed a grievance. (Maier, N.T. 14). He reiterated that there was nothing he could do. Maier then said to Patterson, "You don't do nothing for us, anyhow." Patterson responded, "You're nothing but a shit-stirrer, and I don't like you, anyhow." Maier retorted, "Screw you. I don't like you either." At that, allegedly, Patterson threw off his jacket and said, "I'll kill you, you little motherfucker." He then grabbed plaintiff by the head, thrusting him head-first into a closed window, breaking the glass and thereupon, commenced rubbing his neck across the broken glass remaining in the window. Other union members pulled Patterson away and rescued Maier from further assault, battery, and injury.

Two days later, on February 22, 1977, Maier filed a complaint with the Federal Bureau of Investigation ("FBI") claiming a violation of his rights protected under the Labor Management Reporting and Disclo-

sure Act of 1959 ("LMRDA"), Title I, § 101, 29 U.S.C. § 411. After investigation, the FBI determined not to recommend criminal prosecution concluding that the matter was a personal feud between Maier and Patterson.

Maier never filed a grievance with the Union to complain of Patterson's conduct against him. Prior to and after the altercation, he experienced no bar to his full opportunity to participate in the meetings and affairs of the Union. Maier introduced no evidence that Patterson was predisposed to violence and that the Union knew or should have known of a propensity to use physical force in the course of his duties. Nor was there any evidence of knowledge on the part of the Union that the violence would occur or was likely to occur. Indeed, there was no evidence that Patterson, himself, had planned the altercation. The evidence only showed that an altercation ensued from personal words between Maier and Patterson.

Plaintiff introduced evidence that the Union had undertaken the representation of Patterson when he was sued in his official capacity and had not conducted its own internal investigation of the incident nor taken any disciplinary action against him. There was also evidence in plaintiff's case that he (1) had not pressed charges against Patterson through the Union; (2) had elected to have the FBI investigate the incident; and (3) that the FBI did investigate the matter and had communicated to the Union its decision not to recommend prosecution. *See supra.*

The court dismissed counts I, II and IV of the complaint, but permitted the issue of Patterson's personal responsibility under federal and state law to be decided by the jury. On this latter issue, a verdict was returned against Patterson and in favor of Maier, in the sum of $7,500, of which $4,500 were punitive damages and $3000 compensatory.

In granting the Union defendant's motions for directed verdict, the court rejected plaintiff's assertion that liability of a principal for the intentional torts of an agent can be based solely on respondeat superior. It further refused the assertion that the Union's representation of Patterson in his official capacity prior to trial constituted ratification of his conduct. The court agreed with the Union that there was no evidence the Union had authorized, directed or instigated Patterson to assault and batter Maier. Moreover, there was neither contention nor evidence that assault and battery was an expected method for Union business agents in carrying out the Union's business or in communicating with its membership. In granting defendant Patterson's motion, the court determined there was insufficient evidence to find that Patterson, in his official capacity, had violated plaintiff's rights under LMRDA.

## II. DISCUSSION

Plaintiff raises two rather indistinguishable points to justify a new trial. He reasserts that Patterson was the agent for and acting on behalf of the Union at the time he assaulted and battered plaintiff, and that the Union thereafter ratified Patterson's conduct. Plaintiff further contends that there was sufficient evidence from which the jury could have inferred authorization or ratification.

On an appeal from the directed verdict in defendants' favor, the court must consider all of the evidence, but inferences from that evidence must be construed in the light most favorable to the plaintiff. *Denneny v. Siegel*, 407 F.2d 433, 439 (3d Cir.1969), *Boeing Company v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969).

If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable [people] could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded [people] in the exercise of impartial judgment might reach different conclusions,

the motions should be denied, and the case submitted to the jury.

*Boeing,* 411 F.2d at 374.

Whether the quantity of evidence is sufficient to be considered by the jury is a question of law to be decided by the trial judge. *Denneny,* 407 F.2d at 439. Although the jury may draw inferences based upon all the evidence and their knowledge, a "mere scintilla" of evidence is not enough to warrant submitting a case to a jury.[1] *Fireman's Fund Ins. Co. v. Videfreeze Corp.,* 540 F.2d 1171, 1179 n. 6, *cert. denied,* 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770 (1977) (3d Cir.1976). Furthermore, " 'it is the duty of the plaintiff to produce substantial evidence . . . upon which logically (the jury's) conclusion may be based.' " *Denneny* at 440, *citing Smith v. Bell Telephone Company of Pennsylvania,* 397 Pa. 134, 153 A.2d 477 (1959) (deletion in *Denneny*).

A.   Dismissal of the Union—Count IV

■ In determining whether there was sufficient evidence in this case to warrant a directed verdict in favor of the Union on Count IV of plaintiff's complaint, the court was guided by the legal standards found in section 245 of the Restatement of Agency, 2d. It provides:

A master is subject to liability for the intended tortious harm by a servant to the person or things of another by an act done in connection with a servant's employment, although the act was unauthorized, *if the act was not unexpectable in view of the duties of the servant.* (emphasis added).

This section has been relied upon by Pennsylvania courts, *see e.g., Howard v. Zaney Bar,* 369 Pa. 155, 85 A.2d 401 (1955); *see generally,* ALI Restatement of Law, Agency Pennsylvania Annotations (1936), and the parties agree that it is the appropriate test for agency relationships between a un-

ion and its business agents, under both LMRDA and state law. *See* Union's Memorandum in Opposition to Plaintiff's Motion for New Trial at 7. *See also Aguirre v. Automotive Teamsters,* 633 F.2d 168, 170–73 (9th Cir.1980).

In applying this and other sections of the Restatement of Agency 2d., Pennsylvania has been reluctant to impose liability on a principal or employer where there has been an excessive or dangerous use of force by an employee, servant or agent. In *Howard v. Zaney Bar,* a store tender shot a patron who was making advances to a woman. The Pennsylvania Supreme Court, quoting section 229 Comment (b), held that although an act is a means of accomplishing an authorized result, it may be done in so outrageous or whimsical a manner that it is not within the scope of employment.[2] *Accord, Potter Title and Trust Company v. Knox,* 381 Pa. 202, 113 A.2d 549 (1955) (taxicab driver not acting within scope of employment when shooting at striking taxicab drivers of a competitor company who were standing on the street corner).

■ It is also a matter of the Pennsylvania common law that although willful misconduct of a servant may be within the *course* of the employment, it may not be within its *scope* thereby subjecting the master to liability. *See MacPhail v. Pinkerton's National Detective Agency,* 134 Pa.Super. 351, 3 A.2d 968 (1939) (no liability on the part of principal where detective, employed by Agency, struck plaintiff after discussion at plaintiff's home concerning repossessed automobile); *McMaster, et al. v. Reale,* 177 Pa.Super. 429, 110 A.2d 831 (1955) (the act of an employee attempting to remove a trespasser may be done in such an outrageous fashion or by an unnecessarily harsh method that it is not within the scope of his employment).

---

1.  The Third Circuit, and federal courts in general, have rejected the so-called "scintilla" rule by which a court might not direct a verdict so long as there is *any* evidence in support of the proposition tendered by the non-moving party. *See* 5A Moore's, Federal Practice ¶ 50.02[1], p. 50–31 (2d ed. 1982).

2.  This court has already held that Patterson's alleged conduct was "outrageous." *See* July 10, 1981 Order denying Patterson's Motion for Judgment N.O.V. This determination was also essential for submission of the issue of punitive damages to the jury.

■ Contrary to plaintiff's assertions, there was no evidence from which a reasonable jury could conclude that Patterson's violent actions were in any way expectable or anticipated by the Union in either the course or scope of his duties as a business agent. No favorable inferences could be drawn, therefore, to support a supposition that Patterson's employment was likely to lead to the use of force against third parties such as plaintiff. Furthermore, plaintiff points to nothing in the record wherein the Union had been apprised of Patterson's conduct in the past vis-a-vis union members or other third parties. Nor could such an outrageous act whereby Patterson allegedly pushed plaintiff's head through a glass window, ostensibly to kill him by cutting his throat, be considered within the scope of his employment as a union official.

Plaintiff also argues that the Union ratified defendant Patterson's conduct by virtue of the Union's failure to investigate the incident and to bring disciplinary action against Patterson. To buttress this contention, plaintiff points to the Union's defense of Patterson and of its own defense.

■ Ratification occurs when a principal affirms a previous unauthorized act by his agent. *In re Packer Avenue Assoc.,* 1 B.R. 286, 292 (Bkrtcy.E.D.Pa.1979). Legal representation in a court proceeding does not constitute ratification. *Potter Title,* 381 Pa. at 209, 113 A.2d at 552. Furthermore, it is uncontested that plaintiff never complained to anyone at the Union regarding the February 20, 1977 altercation, nor

did plaintiff activate the disciplinary procedures, though there was evidence that he was not thwarted from exercising his rights to this end. He simply elected not to do so. Since there is no legal basis for the proposition that the Union had a duty to investigate and discipline, absent a charge by an employee which the Union was obligated to process, the nonaction by the Union to investigate is laid at the feet of the plaintiff, not the Union.

■ Furthermore, as originally filed, the complaint averred that Patterson was sued in his official capacity.[3] As such, the Union had an obligation to represent him in order to represent itself. No determination had been made by any agency whether Patterson was the instigator of the altercation or the victim of an assault by Maier. Prior to trial, the Union did cease representing Patterson following the denial of defendants' joint motion for summary judgment. Thereafter, it was apparent there was a conflict of interest because the case was proceeding to trial on all counts.

For these reasons, the court correctly granted the Union's motion for a directed verdict on Count IV.

B. Dismissal of the Union—Count II

■ Plaintiff's motion for a new trial based on the LMRDA claim against the Union is also governed by ordinary common law principles of agency.[4] *See Aguirre v. Automotive Teamsters,* 633 F.2d 168, 172 (9th Cir.1980). For reasons previously stated, there was no record evidence from

---

**3.** Approximately five months later, plaintiff moved to amend his complaint to invoke the pendent jurisdiction of the court with respect to his claim for assault and battery under state law.

**4.** Plaintiff's claim is essentially limited to violation of LMRDA § 101(a)(2), 29 U.S.C. § 411(a)(2) which provides:

(2) Freedom of speech and assembly. Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly

before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: Provided, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

This court has already ruled that plaintiff was not "otherwise disciplined" within the meaning of LMRDA § 101(a)(5), 29 U.S.C. § 411(a)(5). *See Maier v. Patterson,* 511 F.Supp. 436, 446 (E.D.Pa.1981).

which a reasonable person could infer that Patterson was acting as the Union's agent when he assaulted and battered Maier, nor is there record evidence that Patterson's conduct affected Maier's Union membership rights or status. There is testimony by the plaintiff himself that he was never denied the opportunity to attend membership meetings, vote on issues properly before the meeting, or otherwise speak his views, both before and after the altercation on February 20, 1977. (6/15/81, Tr. p. 66–69). The mere fact that the injury may have occurred at a "Union meeting" does not warrant the finding of a LMRDA claim. *See Tomko v. Hilbert*, 288 F.2d 625 (3d Cir. 1971).[5]

■ Plaintiff asserts that the court by denying defendant's motion for summary judgment, *see supra* n. 4, determined that the "evidence was sufficient to allow the issue of Union liability to go to the jury. This assertion loses its glitter when one compares the "evidence" considered by the court in deciding the summary judgment motion to the evidence which plaintiff elected to present at trial. On the motion for summary judgment, the court reviewed and considered the entire FBI Report which included information, which if verified through witnesses, may have been helpful to the plaintiff. For example, the Report referenced an alleged threat of physical harm by Patterson of another employee who had signed a petition for Patterson's removal as business agent. This threat allegedly was made in the presence of another business agent. *See* 511 F.Supp. at 447. However, at trial, the FBI Report did not become part of the record, nor were the FBI agent or the person interviewed by the FBI called as witnesses. Secondly, in his deposition which was considered in deciding the motion for summary judgment, plaintiff stated or inferred that the Union knew

that Patterson had tried to kill him and had become aware of Patterson's version of the incident. *See* 511 F.Supp. at 440. At trial, plaintiff testified that he never told the Union officials his version prior to commencement of the lawsuit. There was no evidence that the Union reviewed the FBI's findings and Report nor that the Union Executive Board was told plaintiff's version. Rather, Patterson reported his version of the incident to the Executive Board which reflected Maier as the protagonist and assaulter.

Thirdly, at trial, there was no evidence from which to infer that the Executive Board appreciated the gravity of plaintiff's claimed injuries; nowhere was there evidence that the Union knew of plaintiff's claim that he was pushed through a window and his neck rubbed across broken glass in an attempt to kill him. Following the alleged thrust through the window, Maier received a one inch cut behind his right ear and at the base of his skull where a piece of glass allegedly entered and from which point plaintiff pulled it out immediately after the fight. Plaintiff received ten stitches in that area at a local hospital, was released after several hours and wore a neck band over the stitches. Plaintiff had no scratch or cut on the top of his head, nor on his face or shoulders. Thus, the mere observation of plaintiff, if it occurred, would not have suggested the kind of violence subsequently claimed by him or that he had sustained a severe injury to the neck. Furthermore, no medical report was sent to the Union or other notice given of plaintiff's injuries. In sum, there was no evidence given at trial that after the incident plaintiff presented himself for observation or was observed by any member of the Union's Executive Board.

While in construing the response to the motion for summary judgment in the light

---

5. Whether or not the meeting in defendant Patterson's office could be reasonably construed as a "Union meeting" need not be reached in light of the above discussion. However, the record clearly reflects that a called Union meeting had just been cancelled for lack of a quorum prior to the meeting in Patterson's office,

(6/15/81, Tr. p. 7). The latter meeting was primarily an opportunity for some union members to air their individual grievances, a conclusion supported by the record which indicates that plaintiff was not fully aware of why the other people were present in Patterson's office. (6/15/81, Tr. p. 19 and 6/16/81, Tr. p. 25–26).

most favorable to the plaintiff, it may have been appropriate to state that there was a suggestion of condonation by the Executive Board in accepting Patterson's version of the incident, such was hardly appropriate on the basis of a trial record which failed to show that the Executive Board had a duty to become informed of plaintiff's version or physical condition, or did, in fact, know of his version. In the absence of knowledge of Maier's version, it is impossible to conclude that there was a selection of Patterson's version over plaintiff's. Once plaintiff sued the Union, it had a duty to defend its interests.

Accordingly, for the reasons stated, a reasonable jury could not have found that Maier's LMRDA claim warranted relief. Thus, a directed verdict on Count II was proper.[6]

### C. Dismissal of Patterson in His Official Capacity—Count I

Plaintiff, without reference to the record, contends there was sufficient evidence from which the jury could have found that Patterson, while engaged in a union meeting and acting within the scope of his authority, attacked plaintiff in an effort to punish him and interfere with his protected right of free speech. Plaintiff again relies on the court's previous decision of March 25, 1981, see supra, n. 4, denying defendant's motion for summary judgment. As previously stated, this reliance is totally misplaced. An earlier denial of a motion for summary judgment is not in any way a barrier to later consideration of a motion for a directed verdict. *LaRue v. General Telephone Co. of Southwest,* 545 F.2d 546 (5th Cir.1977), (defendant's renewed motion for summary judgment, after plaintiff's ev-

idence, treated as motion for directed verdict). *See also* 5A Moore's Federal Practice, ¶ 50.03[4] at 50–49 (2d ed. 1982).

In the instant case, plaintiff's testimony at trial was not sufficient to show that the actions of Patterson interfered with plaintiff's union rights as a member and officer, nor that plaintiff acted as the Union's agent. *See* discussion, *supra.* Furthermore, even assuming the meeting in Patterson's office could be considered a "Union meeting," *see supra,* n. 5, an assault and battery on a union member arising out of a personal feud may not be vindicated under the bill of rights section contained in LMRDA. *Tomko v. Hilbert,* 288 F.2d at 629 (3d Cir.1971).

For the above reasons and those made in granting the Rule 50(a) motion on June 17, 1981, plaintiff's motion for new trial as to Counts I, II and IV is denied.

### III. DELAY DAMAGES

By memorandum and order filed August 7, 1981, 91 F.R.D. 127, the court denied plaintiff's motion to add damages for delay pursuant to Rule 238 of the Pennsylvania Rules of Civil Procedure.[7] The court treated plaintiff's motion as one to "alter or amend the judgment" under Fed. R.Civ.P. 59(e). This rule requires such a motion to be served "no later than 10 days after entry of the judgment." Since judgment was entered thirty-one days before service of plaintiff's motion, the motion was denied.

In light of the Third Circuit's decision in *Hayden v. Scott Aviation Assoc.,* 684 F.2d

---

6. The Third Circuit has held that punitive damages should not be addressed against a principal who does not participate in or approve the tortious conduct of his agent. In *Skeels v. Universal C.I.T. Credit Corp.,* 335 F.2d 846 (3d Cir.1964), Judge Hastie concluded that the conduct of the agent who inflicts the injury complained of must be clearly outrageous to justify vicarious imposition of exemplary damages upon the principal. *Skeels* at 852. While I have already found the conduct of Patterson to be outrageous, for reasons already stated, it could not reasonably have been found that Patterson was acting as the Union's agent when he

injured Maier. *See also Chuy v. Philadelphia Eagles Football Club,* 595 F.2d 1265 (3d Cir. 1979). Therefore, plaintiff's claim for punitive damages against the Union was correctly dismissed.

7. Judgment was entered on June 19, 1981 in favor of the plaintiff and against defendant on plaintiff's pendent state tort claims. The jury awarded plaintiff $3,000 in compensatory damages and $4,500 in punitive damages. Plaintiff claimed $503.00 in delay damages. *See* page 153, *supra.*

270 (3d Cir.1982), holding that Rule 60(a) Fed.R.Civ.P. rather than Rule 59(e), governs a motion to correct the omission of Rule 238 delay damages, plaintiff's motion must be reconsidered and is hereby GRANTED. *See also Jarvis v. Johnson,* 668 F.2d 740 (3d Cir.1982) (Pennsylvania Rule of Civil Procedure 238 applies in diversity cases). Under Rule 60(a), "[c]lerical mistakes in judgments, orders, or other parts of the record ... may be corrected by the court at any time of its own initiative or on the motion of any party...." Under Rule 238 the computation of prejudgment interest after a verdict is a clerical matter in which there is no room for discretion. *Hayden,* 684 F.2d at 272. Accordingly, plaintiff was not time-barred from an award of delay damages and the judgment shall be amended to reflect the sum of $503.00 as requested.[8]

An appropriate order follows.

### ORDER

AND NOW, this 1st day of December, 1982, for the reasons stated in the accompanying memorandum and at trial, it is hereby ORDERED that:

1. Plaintiff's motion for a new trial as to counts I, II and IV of his complaint is DENIED.

2. Plaintiff's motion for delay damages pursuant to Rule 238 of the Pennsylvania Rules of Civil Procedure, is GRANTED, *nunc pro tunc.* The judgment is hereby amended to add $503.00 to the principal amount of the jury award in plaintiff's favor and against William Patterson.

3. Final Judgment is entered in favor of plaintiff on count III and in favor of defendants on counts I, II and IV.

---

**8.** Since there was no written settlement offer prior to trial as required by Rule 238(e), defendants alleged oral offer of $12,500 during pretrial conferences does not defeat plaintiff's motion.