Sandra Kay HAAS, Plaintiff,

v.

James B. BARTO, Defendant.

No. 1:CV–92–0494.

United States District Court,
M.D. Pennsylvania.

Aug. 11, 1993.

**730**

John C. Youngman, Jr., Candor, Youngman, Gibson & Gault, Williamsport, PA, for plaintiff.

Michael J. Kane, Asst. U.S. Atty., Harrisburg, PA, for defendant.

### *MEMORANDUM*

McCLURE, District Judge.

### *BACKGROUND:*

On January 7, 1991, plaintiff Sandra Kay Haas initiated this action with the filing of a complaint in the Court of Common Pleas of Clinton County. The complaint alleged a cause of action in negligence for pulling a set of steps out from under plaintiff while she was working on a large truck.

On April 15, 1992, the matter was removed to this court pursuant to 28 U.S.C. § 2679 upon certification by the United States Attorney's Office that the conduct occurred within the scope of defendant's federal office or employment. Before the court is defendant's motion to substitute the United States as defendant and to dismiss pursuant to Fed. R.Civ.P. 12(b)(1), (6), or, in the alternative, for an evidentiary hearing on the disputed facts. [Defendant James B. Barto and the United States are referred to collectively hereinafter as "defendant."]

As the basis for its factual background, the United States relies upon the deposition of plaintiff. Rule 12 states in pertinent part,

"If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Matters outside the pleading having been presented by the movant, and plaintiff having responded to those matters as provided in Rule 56, we construe the motion to dismiss as a motion for summary judgment.

Since the granting of the motion for summary judgment is, in effect, a holding that the court does not have jurisdiction, the motion for summary judgment and the motion to dismiss under Rule 12(b)(1) will be treated as one motion, and discussed in terms of the motion for summary judgment.

### STANDARD OF REVIEW:

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that *there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*" Fed.R.Civ.P. 56(c) (Emphasis supplied).

... [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

The moving party bears the initial responsibility of stating the basis for its motions and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. He or she can discharge that burden by "showing ... that there is an absence of evidence to support the nonmoving party's case." *Celotex, supra* at 323 and 325, 106 S.Ct. at 2553 and 2554.

Issues of fact are genuine "only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph,* 842 F.2d 689, 694 (3d Cir.1988), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Material facts are those which will affect the outcome of the trial under governing law. *Anderson, supra,* 477 U.S. at 248, 106 S.Ct. at 2510. In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party. *White v. Westinghouse Electric Company,* 862 F.2d 56, 59 (3d Cir.1988).

### STATEMENT OF FACTS:

The following facts are those submitted by defendant in its motion, with facts in dispute construed in favor of plaintiff, the non-movant. If not material to a resolution, the facts submitted by the parties are omitted.

On March 6, 1989, plaintiff and defendant Barto were civilian employees of the United States Army Reserve at a facility in Lock Haven, Pennsylvania. Plaintiff and defendant Barto worked as heavy equipment repairers. The facility where plaintiff and defendant Barto worked had four service bays. Plaintiff was assigned to bay number 2 and defendant Barto was assigned to bay number 3, which was next to bay number 2.

At approximately 9:00 a.m., plaintiff was working on a Chevrolet Blazer in her bay with her partner, Richard Truax. The vehicle was raised up on jack stands under each wheel. Plaintiff had been working on the passenger side of the vehicle, repacking the wheel bearing and then proceeded to change the fuel filter, which was located in the en-

gine compartment. In order to work under the hood of the vehicle, plaintiff needed the assistance of steps, and there were none in her bay.

There were two pairs of steps located in bay number 3, but defendant Barto was not present in bay number 3 when plaintiff removed a set of steps to bay number 2 for her own use. The steps were made of wood and consisted of three treads. At the time plaintiff removed the steps from bay number 3, they were up against a truck in bay number 3, but no one was around the truck. Plaintiff was unaware of whether any work was in progress on the truck in bay number 3, though she knew that bay number 3 was defendant Barto's work area.

Plaintiff carried the steps over to the passenger side of the Blazer on which she was working, and set them down against the tire and frame of the vehicle. Plaintiff was on the top step of the set of steps roughly ten to fifteen minutes when she saw defendant Barto walking towards the parts room. The next event of which plaintiff was aware was defendant pulling the steps out from under her while making the comment, "I made these ____ing steps; they are mine." Plaintiff stepped down from the steps on her left foot very hard on the concrete floor and twisted her neck while twisting her torso from underneath the hood because she did not want to fall and did not want to hit her head.

The steps in question were regularly and routinely in use at the army reserve facility. Plaintiff understood that defendant Barto took the steps back and returned them to the place where he was using them, and in fact that is what occurred.

Plaintiff reported the incident immediately, but did not report any injury at the time of the incident. Her physical problems began during the course of that day, and she worked from the day of the incident, a Monday, through Wednesday of the same week at 4:00 p.m. She did not work on that Thursday or Friday, and went to a doctor that Thursday with her complaints. The appointment was made the day after the incident. [Plaintiff's full injuries are not material to disposition of the instant motion.]

Plaintiff applied for and received workers compensation under the Federal Employees Compensation Act in December, 1990, due to the injuries received as a result of the incident of March 6, 1989.

Plaintiff further alleges that defendant Barto's action in pulling the steps from under her were personal to her and not connected with defendant Barto's employment.

## DISCUSSION:

The motion filed by defendant first seeks to substitute the United States as defendant based upon the Federal Tort Claims Act. 28 U.S.C. § 1346(b), 2671 et seq. Specifically, § 2679(b)(1) provides that an action against the United States, and not against a federal employee/tortfeasor, is the exclusive avenue of redress for an injury caused by a federal employee acting within the scope of his employment. Section 2679(d)(1) provides that certification by the Attorney General or his designee constitutes prima facie evidence that the employee was acting within the scope of his employment.

Should the United States be substituted as the defendant, defendant next argues that the United States has not waived sovereign immunity under the facts of this case. Specifically, defendant argues that plaintiff has not strictly complied with the Federal Tort Claims Act's provisions regarding exhaustion of administrative remedies, and that, since plaintiff has benefitted from the Federal Employee Compensation Act, 5 U.S.C. §§ 8101 et seq., this action is barred by the exclusive remedy provisions of that Act.

## I. SUBSTITUTION

 Under the Federal Tort Claims Act, a federal district court has exclusive jurisdiction over any claim brought against the United States for injuries caused by the negligent or wrongful act or omission of a federal employee acting within the scope of his office or employment. 28 U.S.C. § 1346(b). The remedy against the United States is exclusive.

The remedy against the United States provided by sections 1346(b) and 2672 of this title for injury or loss of property, or

personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim or against the estate of such employee. Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded without regard to when the act or omission occurred. § 2679(b). In short, a federal employee is absolutely immune from suit for common law claims of tortious conduct occurring within the scope of his or her office or employment, with certain limited exceptions not applicable to the instant case. *United States v. Smith,* 499 U.S. 160, 166, 111 S.Ct. 1180, 1185, 113 L.Ed.2d 134, 144–145 (1991).

 Moreover, certification by the Attorney General is prima facie evidence that the conduct which is alleged to have caused an injury is within the scope of the employee's office or employment.

Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States for the district and division embracing the place in which the action or proceeding is pending. Such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant. This certification of the Attorney General shall conclusively establish scope of office or employment for purposes of removal.

§ 2679(d)(2). The designee of the Attorney General, the United States Attorney for the Middle District of Pennsylvania, has certified that the complained-of conduct was within the scope of defendant Barto's employment. Therefore, the United States has established a prima facie case that the United States should be substituted for defendant Barto. *See also Schrob v. Catterson,* 967 F.2d 929, 934–936 (3d Cir.1992).

In *Schrob, supra,* the Third Circuit also noted that, while certification is conclusive for purposes of removal, it is not conclusive on the issue of liability; despite removal, a district court must review the alleged conduct and determine whether the employee may be personally liable because the conduct was outside the scope of employment. *Id.* at 934. The Third Circuit recommended that the district court allow discovery and, if necessary, a hearing to determine whether conduct was within the scope of employment. *Id.* at 936. In the instant case, discovery has been completed, and a hearing is not necessary, since there are facts of record sufficient for a determination of the scope of defendant Barto's employment.

According to plaintiff, she took the set of steps from the bay in which defendant Barto was working, although he was not actually present at the time. While she was leaning over the truck on which she was working, perched on the top step, defendant pulled the steps out from beneath her and claimed them as his own. Plaintiff was injured in the subsequent fall.

Pennsylvania law governs the question of whether defendant Barto's conduct was within the scope of his employment. *Williams v. United States,* 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955); *Keener v. Dept. of the Army,* 498 F.Supp. 1309 (M.D.Pa.1980), *aff'd,* 659 F.2d 1068 (3d Cir.1981) (table). Pennsylvania courts have applied the Restatement (Second) of Agency § 228, which reads in pertinent part:

(1) Conduct of a servant is within the scope of employment if, but only if: (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master; and (d) if force is intentionally used by the servant against another, the use of the force is not unexpectable by the

master. (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits or too little actuated by a purpose to serve the master.

See *Shuman Estate v. Weber*, 276 Pa.Super. 209, 419 A.2d 169, 173 (1980); *Fitzgerald v. McCutcheon*, 270 Pa.Super. 102, 410 A.2d 1270, 1272 (1979); *Maier v. Patterson*, 553 F.Supp. 150, 154 (E.D.Pa.1982).

■ Applying these principles to the case at hand, retrieval of the steps is the kind of work for which defendant Barto was employed to perform, since he would need the steps to work on trucks, as did plaintiff. The retrieval occurred within the authorized time and space limits. The conduct was motivated, at least in part, to serve the master, because defendant Barto retrieved steps that he himself used to perform his tasks. Finally, defendant Barto's conduct was not unexpectable by the master.

Plaintiff contests only the latter two contentions. She claims that the conduct was motivated wholly by animosity towards her. However, this is not a case of an attack upon plaintiff; retrieval of work equipment, even though causing injury thereby, demonstrates a purpose to serve the master *at least in part*. The benefit to the master may have been tangential to an intent to bother or hurt plaintiff, but the benefit nevertheless was present. See *Shuman Estate, supra*, 419 A.2d at 173 ("It is not necessary, however, that the acts be specifically authorized by the master to fall within the scope of employment; it is sufficient if they are clearly incidental to the master's business. . . ."; citations omitted).

■ Plaintiff also contends that the employer could not have reasonably expected conduct like that of defendant Barto. An act is unexpectable by the master when it is done in a whimsical or outrageous manner. *Maier, supra*, at 154 (citing *Howard v. Zaney Bar*, 369 Pa. 155, 85 A.2d 401 (1955); *Potter Title and Trust Co. v. Knox*, 381 Pa. 202, 113 A.2d 549 (1955)). Pennsylvania cases in which a master has been held not to be liable for conduct in the course of a servant's employment but outside the scope of employment indicate that a considerably higher degree of "outrageousness" than is present in this case is necessary before the conduct will be found to be outside the scope of employment.

For example, in *Maier, supra*, the defendant grabbed the plaintiff by the head, thrust him through a closed window, and rubbed his neck across the broken glass remaining in the window. *Id.* at 152. Such conduct was found to be outside the scope of defendant's employment. *Id.* at 155.

In *Fitzgerald, supra*, the defendant was an off-duty policeman who was accompanied during an evening of drinking by the plaintiff. After returning to the defendant's home, the defendant's wife asked the plaintiff to retrieve the defendant's car keys. The plaintiff gave the keys to the defendant's wife. The defendant later appeared at the plaintiff's home demanding his keys. When the plaintiff continued to explain that he did not have the keys, the defendant shot the plaintiff six times. *Id.* 410 A.2d at 1271. The City of Philadelphia, which employed the defendant, was held to be not liable for the plaintiff's injuries. *Id.* at 1272.

Other cases indicate the need for the conduct to be of such an outrageous nature before a master will not be held liable for the acts of a servant. See, e.g., *Howard, supra* (bartender shot male patron for remarks made to a female patron); *Lunn v. Boyd*, 403 Pa. 231, 169 A.2d 103 (1961) (cab driver stabbed plaintiff after a verbal altercation).

These cases are in sharp contrast to *Ash v. 627 Bar, Inc.*, 197 Pa.Super. 39, 176 A.2d 137 (1961), in which the plaintiff/patron was beaten unconscious, probably by the bartender, because he refused to pay for drinks. The employer was held liable:

They [the actions of the bartender] were not "shocking and a gross abuse of authority," nor were they "so excessive and dangerous, totally without responsibility or reason," as were a bartender shoots a patron annoying a female, [*Howard, supra* ]. They were in fact fairly adapted to accomplish the purpose of the employment, . . . There were no weapons involved in the case at bar, and the bartender was not

acting toward an interest antagonistic to the defendant.

*Ash, supra,* 176 A.2d at 140.

The instant case is more analogous to *Ash, supra,* than any of the cases in which the master was held not liable: defendant Barto was retrieving equipment used to perform his task, but was more aggressive and physical than is normally acceptable behavior. However, his conduct did not rise to the level of using a weapon or clearly intending only to do serious bodily harm.

Finally, plaintiff indicates a desire for an evidentiary hearing to resolve factual disputes, as suggested in *Schrob, supra.* However, all facts have been construed in favor of plaintiff, so that there is no issue of fact left to be resolved, and such a hearing would be superfluous.

We therefore hold that defendant Barto was acting within the scope of his federal employment, and is immune from liability under § 2679(b).

## II. DISMISSAL

The United States sets forth two reasons for dismissal of the instant action: (1) plaintiff did not exhaust her administrative remedies prior to commencing this action; and (2) plaintiff has benefitted from the Federal Employee Compensation Act, which constitutes the exclusive remedy for plaintiff.

As a sovereign, the United States enjoys absolute immunity, and may be held liable only when it expressly waives immunity. *United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1982). A waiver of sovereign immunity must be construed strictly in favor of the government and may not be enlarged beyond the statutory language authorizing it. *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 685–686, 103 S.Ct. 3274, 3278, 77 L.Ed.2d 938 (1983).

### A. Administrative Remedies

An action to recover for the negligent conduct of a federal employee may be maintained only after the claim has been presented to the appropriate federal agency, and there has been a final denial of the claim by the agency or six months have passed. 28 U.S.C. § 2675(a). Failure to exhaust administrative remedies under the Federal Tort Claims Act bars an action in a district court, since the terms of the waiver "define a court's jurisdiction." *Richardson v. Knud Hansen Mem. Hosp.,* 744 F.2d 1007, 1010 (3d Cir.1984) (citation omitted).

In the instant case, the incident in question took place on March 6, 1989. Plaintiff initiated suit in the Court of Common Pleas on January 7, 1991, according to plaintiff's brief, on February 4, 1991, according to plaintiff's petition for removal, and on October 31, 1991, according to defendant's brief; construing the facts in favor of plaintiff, we assume the correct date to be January 7, 1991. In her brief, plaintiff does not contest the fact that she has not exhausted administrative remedies, and so this court does not have jurisdiction over the action.

Nevertheless, plaintiff requests an order granting 60 days in which to seek a remedy from the appropriate agency. Since we do not have jurisdiction in this matter, we do not have authority to do so.

### B. Federal Employees Compensation Act

Since we have already determined that the court does not have jurisdiction in this matter, we do not reach the question of whether plaintiff's benefits under the Federal Employees Compensation Act, 5 U.S.C. §§ 8101 et seq., constitute her exclusive remedy.

### CONCLUSION:

The conduct of defendant Barto occurred during the course of and within the scope of his federal employment. Under the Federal Tort Claims Act, he is immune from liability for his conduct, and the United States is the proper party-defendant.

The United States is immune unless it expressly waives its sovereign immunity. When it does not do so, a district court is without jurisdiction to hear a matter in which the United States is the named defendant. The United States has waived its immunity for tort claims only when the plaintiff has exhausted administrative remedies. As plaintiff in the instant case has failed to do

so, the court is without jurisdiction to hear this matter.

For these reasons, the motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), which we have construed as a motion for summary judgment, and the motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), which we have viewed in conjunction with the motion for summary judgment, will be granted. An appropriate order shall issue.

## ORDER

For the reasons stated in the accompanying memorandum, **IT IS ORDERED THAT:**

1. The motion (record document no. 4) of defendant James D. Barto and the United States to substitute the United States as defendant is granted, and James D. Barto is dismissed as a defendant.

2. The motion (record document no. 4) of the United States to dismiss under Fed. R.Civ.P. 12(b)(6) is construed as a motion for summary judgment pursuant to Rule 12(b), Fed.R.Civ.P. 56.

3. The motion of the United States for summary judgment and the motion (record document no. 4) of the United States to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) are construed as a single motion for summary judgment.

4. The motion of the United States for summary judgment is granted.

5. The motion (record document no. 4) of the United States for an evidentiary hearing is denied as moot.

6. The complaint is dismissed for lack of federal subject matter jurisdiction.

7. The clerk is directed to close the file.