**Eileen M. FITZPATRICK, Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

**Cheryl Ann and Alan
KEHNAST, Plaintiffs,**

v.

**UNITED STATES of America,
Defendant.**

**Civ. A. Nos. 88–270–CMW, 88–82–CMW.**

United States District Court,
D. Delaware.

Dec. 7, 1989.

---

Elwood T. Eveland, Jr., of Woloshin, Tenenbaum & Natalie, Wilmington, Del., for plaintiff Fitzpatrick.

1. Plaintiff Fitzpatrick filed a Notice of Dismissal on May 23, 1989, dismissing without prejudice

Robert Pasquale, and Arthur M. Krawitz, of Doroshow, Pasquale & Linarducci, Wilmington, Del., for plaintiffs Kehnasts.

William C. Carpenter, Jr., U.S. Atty., and Patricia C. Hannigan, Asst. U.S. Atty., Wilmington, Del., for defendant.

CALEB M. WRIGHT, Senior District Judge.

Plaintiffs Cheryl Ann and Alan Kehnast brought suit in this Court pursuant to 28 U.S.C. § 2671, *et seq.*, (the Federal Tort Claims Act) on February 19, 1988, against defendant United States of America. Plaintiffs alleged that they sustained injuries in a motor vehicle accident due to the negligence of a member of the United States military.

Plaintiff Eileen M. Fitzpatrick also commenced an action in this Court pursuant to the Federal Tort Claims Act on May 20, 1988, against defendants United States of America and Willie D. Davis.[1] Plaintiff Fitzpatrick's complaint averred injuries resulting from the same motor vehicle accident.

Plaintiffs Cheryl Ann and Alan Kehnast moved for leave to amend their original complaint on July 1, 1988. By an Order dated August 15, 1988, the Court granted this motion. This amended complaint added a claim of negligent entrustment (of a motor vehicle) against the United States.

On March 14, 1989, the Court issued an Order of Consolidation with respect to the actions of plaintiffs Cheryl Ann and Alan Kehnast, and plaintiff Eileen M. Fitzpatrick against the United States.

The United States submitted a motion to dismiss, or in the alternative, for summary judgment on June 12, 1989. The United States moved to dismiss and alternatively for summary judgment against the negligence claims of all three plaintiffs in the consolidated action. With respect to plaintiffs Cheryl Ann and Alan Kehnast, the United States asserts that summary judgment in its favor also is warranted on the

her claim against defendant Willie D. Davis.

negligent entrustment claim. Accordingly, these motions are before the Court.

This Court has jurisdiction pursuant to 28 U.S.C. § 1346(b).

For the reasons which will be stated herein, the Court denies the United States' motions to dismiss and for summary judgment.[2]

## I. FACTS

In March of 1985, Willie D. Davis was a Sergeant First Class in the United States Army ("the Army") assigned to Readiness Group Mead, at Fort Meade, Maryland. Sergeant Davis' position was Senior Medical Sergeant which included the responsibility of acting as a medical advisor for the National Guard and Army Reserves in Delaware, Maryland, Virginia, and the District of Columbia. Sergeant Davis usually would drive from Fort Meade to a location of a National Guard or Army Reserve unit, frequently for weekend drills. Sergeant Davis' position involved assisting in the training of members of the Army Reserves and National Guard on the proper operation of a military medical unit. When Sergeant Davis was required to travel to the location of a National Guard or Army Reserve unit, he had authorization to operate a government vehicle and to make his own arrangements for overnight accommodations.

On Friday, March 15, 1989, Sergeant Davis obtained a government-leased vehicle from the motor pool at Fort Meade. He then proceeded to drive this vehicle to New Castle, Delaware to participate in the activities of the 116th M.A.S.H. unit of the National Guard over the weekend. At his deposition, Sergeant Davis testified that he had essentially no recollection of the events which transpired after his arrival at the National Guard unit in Delaware that Friday evening to the time when he awoke in a jail cell the following Saturday morning.

Sergeant Davis subsequently made a formal statement about this trip and the events surrounding it to Captain Kenneth Grant. According to the substance of this statement, it appears that Sergeant Davis arrived at the National Guard unit in Delaware at about 6:00 P.M. on March 15, 1985. Sergeant Davis then attempted to contact Specialist Ralph Scott, the trainee NCO for the 116th M.A.S.H. unit, but was unsuccessful. He thereafter went to the officer's club for the apparent purpose of locating a Captain Hayes, the unit executive officer. Upon learning that Captain Hayes was not at the club, Sergeant Davis remained at the officer's club, during which time he consumed alcohol, socialized, and played pool. Sergeant Davis spoke intermittently with a Lieutenant Kearns and they played pool together. Davis' conversation with Lieutenant Kearns in part related to her job responsibilities within the unit.

At about 9:30 P.M., Sergeant Davis left the club and drove the government-leased car toward his motel billet which was located about five or six miles from the club. On his way to his motel billet, Sergeant Davis collided with the last of three cars stopped at a traffic signal on Route 71, near Churchman's Road, New Castle, Delaware. The vehicle Davis was driving hit the vehicle of plaintiffs Cheryl Ann and Alan Kehnast, which struck the vehicle of plaintiff Eileen M. Fitzpatrick, which in turn hit a vehicle driven by a Mr. William Sebok. Witnesses summoned police to the scene of the accident. The police arrested Sergeant Davis for Driving Under the Influence of Alcohol. Davis submitted to a breathalyzer test at Delaware State Police Troop 6 and this test indicated a blood alcohol level of 0.20. All plaintiffs suffered injuries as a result of this accident.

After the accident, the Army commenced a formal investigation. The Army, at the conclusion of the investigation, instituted

2. On June 29, 1989, plaintiffs Cheryl Ann and Alan Kehnast filed a motion to strike the United States' opening brief or, in the alternative, to grant leave to conduct additional discovery in view of two affidavits which the plaintiffs urged were improperly included in the United States' opening brief and appendix thereto. Because the Court denies the United States' motions on all claims, it is not necessary to address the motion to strike the United States' opening brief or to grant leave to conduct additional discovery.

disciplinary measures against Sergeant Davis, including the loss of on-post driving privileges in his private vehicle for one year, a restitution payment for damage to the vehicle, a Letter of Reprimand, relief from his duties, a fine, and orders to attend an in-patient alcohol treatment facility. These measures effectively constituted the demise of Davis' twenty-three year military career.[3]

At the time of the accident, the Army had a formal policy regarding drug and alcohol abuse.[4]

## II. STANDARDS OF REVIEW

### A. Motion to Dismiss

Federal Rule of Civil Procedure (F.R.C.P.) 12(b) provides that certain defenses can be asserted by motion, including the contention that the court lacks subject matter jurisdiction over the controversy. F.R.C.P. 12(b)(1). In the present case, the United States asserts that there is no federal subject matter jurisdiction because the threshold requirements for jurisdiction under the Federal Tort Claims Act have not been met. The gravamen of this assertion is that Sergeant Davis was not acting within the scope of his employment at the time of the accident within the meaning of 28 U.S.C. § 1346(b).

■ The Court views the United States' motion to dismiss as a factual attack on the jurisdictional allegations of the complaints of the plaintiffs, and therefore the Court may look beyond the face of the pleadings in this determination. *See International Association of Machinists & Aerospace Workers v. Northwest Airlines, Inc.*, 673 F.2d 700, 711–12 (3d Cir.1982); 2A *Moore's Federal Practice* ¶ 12.07[2.–1]. A

plaintiff can defeat a motion to dismiss for lack of subject matter jurisdiction by establishing a prima facie case of federal subject matter jurisdiction. *See* 1 *Moore's Federal Practice* 1989 Rules Pamphlet (Federal Judiciary Edition) § 12.4.

### B. Motion for Summary Judgment

■ F.R.C.P. 56(c) ("Rule 56") provides that summary judgment is proper if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." A court confronted with a summary judgment motion "must view all facts, and any reasonable inference from those facts, in the light most favorable to the party opposing summary judgment." *Wilmington Housing Authority v. Pan Builders, Inc.*, 665 F.Supp. 351, 353 (D.Del.1987) (citing *Adickes v. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970)). The movant carries the burden of demonstrating the absence of genuine issues of material fact, regardless of which party would have the burden of persuasion at trial. *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir.) (en banc), *cert. dismissed*, 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987).[5]

## III. DISCUSSION

### A. Negligence Claims

#### 1. Threshold Requirements

All plaintiffs have submitted claims against the United States alleging that negligence on the part of Sergeant Davis caused their injuries from the accident. These claims are based upon 28 U.S.C. §§ 1346(b) and 2671.[6] The essence of the

---

**3.** Sergeant Davis had previously been arrested for a motor vehicle violation involving alcohol in March, 1984. As a consequence, Sergeant Davis had been ordered to attend a military, out-patient rehabilitation program. He also faced other punishment from this incident. *See* Deposition of Davis, at 4–5, and 29.

**4.** *See* 32 C.F.R. § 62.4 (July 1, 1984); 32 C.F.R. § 62b.3(b) (July 1, 1984). *See also* 10 U.S.C. § 911 (providing that drunken driving is a violation of Uniform Code of Military Justice).

**5.** Stated in different terms, "[t]he party moving for summary judgment has the burden of clearly establishing the lack of any triable issue of fact by the record properly before the court." 1 *Moore's Federal Practice* 1989 Rules Pamphlet (Federal Judiciary Edition) § 56.3[13].

**6.** Section 1346(b) provides the following:
(b) Subject to the provisions of chapter 171 of this title, the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive

controversy lies with the threshold requirement that Sergeant Davis must have been acting within the scope of his employment at the time of the accident before the Government is liable under § 1346(b).[7] *See Short v. United States,* 245 F.Supp. 591, 592 (D.Del.1965) (holding that predicate for holding United States vicariously liable for torts of its employees is finding that employee was acting within the scope of government employment at the time the tort was committed).[8] The United States contends that the plaintiffs have not established a prima facie case that Sergeant Davis was acting within the scope of his government employment at the time of the accident, or alternatively, that Sergeant Davis was not acting in the scope of his employment as a matter of law.

### 2. Military Employees

■ A member of the United States military is deemed as acting within the scope of his or her employment, for purposes of 28 U.S.C. § 1346(b), if he or she is "acting in line of duty". 28 U.S.C. § 2671. State law pertaining to the doctrine of *respondeat superior* governs the determination of the scope of employment. *Williams v. United States,* 350 U.S. 857, 859, 76 S.Ct. 100, 100 L.Ed. 761 (1955); *McSwain v. United States,* 422 F.2d 1086, 1088 (3d Cir.1970). Because the accident occurred in Delaware, the Court must turn to Delaware law concepts of *respondeat superior* in the present case. *McSwain,* 422 F.2d at 1088.

### 3. Delaware Law on Scope of Employment

The leading Delaware case regarding an employee's acting within the scope of employment is *Coates v. Murphy,* 270 A.2d 527 (Del.1970). The Delaware Supreme Court adopted the analysis set forth in *Restatement 2d, Agency 2d,* § 228:

(1) Conduct of a servant is within the scope of employment if, but only if:

(a) It is of a kind he is employed to perform;

(b) it occurs substantially within the authorized time and space limits;

(c) it is actuated, at least in part, by a purpose to serve the master, and * * *.

(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or *too little actuated by a purpose to serve the master.* (emphasis original).

*Coates v. Murphy,* 270 A.2d 527, 528 (Del. 1970). This determination is ordinarily one for the factfinder, unless the determination is "so clearly indicated by the facts that the

---

jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b).

Section 2671 provides the following:

As used in this chapter and sections 1346(b) and 2401(b) of this title, the term—

"Federal agency" includes the executive departments, the judicial and legislative branches, the military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States, but does not include any contractor with the United States.

"Employee of the government" includes officers or employees of any federal agency,

members of the military or naval forces of the United States, members of the National Guard while engaged in training or duty under section 316, 502, 503, 504, or 505 of title 32, and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation.

"Acting within the scope of his office or employment", in the case of a member of the military or naval forces of the United States or a member of the National Guard as defined in section 101(3) of title 32, means acting in line of duty.

28 U.S.C. § 2671.

7. Sergeant Davis, as a military officer, was an "employee of the Government" of the United States for purposes of 28 U.S.C. § 1346(b). *See* 28 U.S.C. § 2671.

8. In *Short,* this Court denied the United States' motion for summary judgment on this issue. *Short,* 245 F.Supp. at 592.

court should decide it as a matter of law." *Draper v. Olivere Paving & Construction Co.,* 181 A.2d 565, 569 (Del.1962).[9] *See also E.I. duPont de Nemours and Co. v. Spence Protective Agency,* No. 86C–JA–112, slip op. at 2–3, 1987 WL 8272 (Del.Super.Ct. March 6, 1987).[10]

### 4. Application to Present Facts

The parties have presented arguments addressing whether Sergeant Davis was acting within the scope of his employment when he entered the officer's club, and remained there socializing, drinking, and playing pool. The parties then turn to the alternatives that (1) if Davis was not within the scope of his employment at the club, he did/did not enter it upon getting in a car and driving back to his motel billet for the evening in an intoxicated condition, and (2) if Davis was within the scope of his employment at the club, he did/did not depart from it when he entered his car in an intoxicated state and proceeded to drive to his motel billet for the evening. The Court chooses not to delve into the circumstances at the club, because, as the United States has pointed out, "the critical issue is whether he was within the scope [of his employment] at the time of the alleged accident." Opening Brief of United States at 21. As this Court has previously emphasized, the crucial time is "the moment when the tort occurred." *Short v. United States,* 245 F.Supp. 591, 593 (D.Del.1965).[11]

■ The Court holds that at the time of the accident, there are sufficient undisputed facts to establish a prima facie case of jurisdiction under 28 U.S.C. § 1346(b). Furthermore, the Court rules that the United States is not entitled to judgment as a matter of law, because the record contains sufficient disputed facts upon which a factfinder could conclude that Davis was acting in the scope of his employment at the time of the accident.

The undisputed facts indicate that Sergeant Davis left Fort Meade, Maryland on Friday, March 15, 1985, to travel to and participate in the weekend activities of the 116th M.A.S.H. unit of the National Guard. He went to the officer's club in search of the executive officer of the 116th M.A.S.H. unit, but being unable to locate this person, remained there to socialize, drink and play pool. When he left the club, he proceeded to his car to drive to his motel billet. The Court, therefore, finds that these facts alone serve as prima facie evidence that Davis was acting within the scope of his employment at the moment of the accident. Thus, these undisputed facts must defeat the United States' motion to dismiss the negligence claims.

■ The United States alternatively argues that because Davis was apparently driving under the influence of alcohol near the time of the accident, this unlawful conduct, as a matter of law, removed Davis from the scope of his employment. To support this argument, the United States emphasizes Davis' conviction on the charge of driving while under the influence of alcohol stemming from his arrest at the scene of the accident. The United States, however, has cited no authority which would directly support this position, and consequently, the Court is not persuaded by this argument.

The Government's reliance upon *Rosa v. United States,* 119 F.Supp. 623 (D.Hawaii 1954) is misplaced. Several important factual distinctions between the case at bar and *Rosa* are present. First, in *Rosa,* the Army private was "two miles away from his deserted post returning from a frolic of his own...." *Id.* at 624. The court also noted that the private had "a fixed post of

---

**9.** In *Draper,* the Delaware Supreme Court reversed a lower court's granting of summary judgment, and ruled that a jury question existed regarding the scope of employment. *Draper,* 181 A.2d at 572–73.

**10.** The Court in this case also found that the issue of whether an employee was acting within the scope of employment was a jury question.

**11.** Under this analysis, the United States' citation to *Keener v. Department of the Army,* 498 F.Supp. 1309 (M.D.Pa.1980), is inapposite insofar as the United States has relied upon this case to argue that Davis was outside the scope of his employment while at the club.

duty two miles distant." *Id.* at 625. In the present case, although intoxicated, Sergeant Davis was returning to his scheduled billet for the evening on a week-end long military mission. Therefore, whether this action by Davis was a frolic of his own or conduct within the scope of his employment is a more appropriate question for the factfinder.

The Government's citation of *A.R. Anthony & Sons v. All–State Investigation Security Agency, Inc.,* No. 82C–AP–18, slip op. (Del.Super. Sept. 27, 1983), is equally unavailing. In *A.R. Anthony,* an employee of a security company intentionally set fire to the premises he was guarding. *Id.* at 2. The employee was later convicted of arson. *Id.* This case involved an intentional action (arson), but driving while intoxicated is not a crime requiring intent under Delaware law.[12] The conduct of Sergeant Davis (driving while intoxicated) is a difference in *kind,* not degree, from the conduct (arson) at issue in *A.R. Anthony.* Because Sergeant Davis was headed for his billet on a weekend long military mission, the Court cannot hold that as a matter of law, a trier of fact could "only conclude that ... [Davis'] act was independent of the ... [Government's] business and solely for ... [Davis'] benefit or pleasure...." *Id.* at 7.[13]

### B. Negligent Entrustment Claim

Plaintiffs Cheryl Ann and Alan Kehnast have also presented a claim of negligent entrustment against the United States. The essence of this claim is that the United States negligently entrusted a motor vehicle to Sergeant Davis when it knew or should have known that Davis would drive the vehicle while intoxicated and thus in an unsafe manner. The United States moves for summary judgment on this claim and relies upon the "discretionary function" exception, 28 U.S.C. § 2680(a), to the Federal Tort Claims Act. The Court, however, finds that the discretionary function exception does not protect the United States' decision to entrust a motor vehicle to Sergeant Davis from potential liability under the Federal Tort Claims Act.

### 1. The Discretionary Function Exception

The discretionary function exception is one specific provision by which Congress has made the United States immune from liability under the Federal Tort Claims Act:

> The provisions of this chapter and section 1346(b) of this title shall not apply to—
>
> (a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).[14]

In this circuit, section 2680(a) operates as a jurisdictional bar to suits under the Federal Tort Claims Act. *Berkovitz v. United States,* 822 F.2d 1322, 1325 (3d Cir.1987), *rev'd on other grounds,* 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988); *Griffin v. United States,* 500 F.2d 1059, 1063 (3d

---

**12.** Title 11 of the Delaware Code Annotated, Crimes and Criminal Procedure, specifies three categories of arson. Del.Code Ann. tit. XI, §§ 801–803 (1974). All three categories contain the requirement of intent. Driving while intoxicated is basically a strict liability crime in Delaware. Del.Code Ann. tit. XXI, § 4177 (1974).

**13.** The Court also notes that *Marcozzi v. Nelson,* No. 84C–JA–15, slip op., 1986 WL 453 (Del.Super. Nov. 5, 1986) has little applicability to the present case. The Delaware Superior Court pointed out that the accident "occurred on a weekend while ... [the employee] had no work

assignment ... and where the purpose of the trip was for ... [the employee] to visit his grandparents and to see wildlife, and the employer had not requested ... [the employee] to make that trip...." *Id.* at 5. In contrast, Sergeant Davis was on a weekend military mission presumably pursuant to orders from his superiors.

**14.** 28 U.S.C. § 2680(b)–(f) and (h)–(n) sets forth other areas in which the United States has immunity from suit under the Federal Tort Claims Act.

Cir.1974) (citing *Gibson v. United States*, 457 F.2d 1391, 1392 n. 1 (3d Cir.1972)).

The exact scope of the discretionary function exception has been anything but clear since its creation.[15] In *Dalehite v. United States*, 346 U.S. 15, 35–36, 73 S.Ct. 956, 967–968, 97 L.Ed. 1427 (1953), the United States Supreme Court held that the discretionary function exception applied to "determinations made by executives or administrators in establishing plans, specifications or schedules of operations." The Supreme Court later explained that "it is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exemption applies in a given case." *United States v. Varig Airlines*, 467 U.S. 797, 813, 104 S.Ct. 2755, 2764, 81 L.Ed.2d 660 (U.S.1984). Thus, the fundamental inquiry in application of the discretionary function exemption focuses on whether the challenged acts of a United States employee "are of the nature and quality that Congress intended to shield from tort liability." *Id.*

The Supreme Court very recently addressed the discretionary function exception in *Berkovitz v. United States*, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). The Court indicated that a prerequisite for application of the discretionary function exception is that the conduct at issue must involve an element of judgment or choice. *Id.* 108 S.Ct. at 1958.[16] Once this aspect is established, a court must examine if the judgment or choice is of the nature that the discretionary function exception was designed to protect—"administrative decisions grounded in social, economic, and political policy." *Id.* at 1959. The essence of this defense is to protect governmental decisions involving the exercise of policy judgment. *Id.*

### 2. Application To Present Facts

■ The United States contends that the decision to entrust the motor vehicle to Sergeant Davis involved a discretionary judgment as to the allocation of valuable resources. On this basis, therefore, the United States asserts that the discretionary function exception applies. The Court, however, finds no merit in the United States' position.

For purposes of this Opinion, the Court concedes that the decision to entrust the motor vehicle to Sergeant Davis involved an element of judgment or choice. *See Berkovitz*, 108 S.Ct. at 1958. The United States, however, has simply not articulated any social or economic policy which relates to this decision. *See Berkovitz*, 108 S.Ct. at 1959. The United States' general reference to the economic policy regarding the allocation of scarce and valuable resources is overbroad and an insufficient basis upon which to apply the discretionary function exception in this case. The United States has pointed to no specific policy guidelines or policy directives to substantiate this "economic policy". The Court views the decision to entrust a motor vehicle to Sergeant Davis as more of a localized, routine decision and not one based upon any particular economic or social policy.

The United States relies upon *Taylor v. United States*, 668 F.Supp. 1302 (W.D.Mo. 1987) in support of its position. In *Taylor*, the Department of Labor had made a policy decision at the national level, and this policy was carried out in a specific situation. *Id.* at 1303. The Department had basically delegated operational control of a Job Corps Center to a private entity. *Id.* The Court held that the discretionary function exception applied. *Id.* at 1305.

**15.** "[I]t is ... indeed impossible ... to define with precision every contour of the discretionary function exception." *United States v. Varig Airlines*, 467 U.S. 797, 813, 104 S.Ct. 2755, 2764, 81 L.Ed.2d 660 (1984). *See generally* Kratzke, *The Convergence of the Discretionary Function Exception to the Federal Tort Claims Act with Limitations of Liability in Common Law Negligence*, 60 St.John's L.Rev. 221 (1986); Comment, *The Discretionary Function Exception and Mandatory Regulations*, 54 U.Chi.L.Rev. 1300 (1987); Comment, *Federal Tort Claims Act: The*

*Development and Application of the Discretionary Function Exemption*, 13 Cumb.L.Rev. 535 (1983); Comment, *The Discretionary Function Exception: Is It A Bar To Federal Jurisdiction?*, 1983 Utah L.Rev. 117 (1983).

**16.** The discretionary function exemption is not appropriate "when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Berkovitz*, 108 S.Ct. at 1958.

In the present case, the United States has not indicated the presence of a specific national or otherwise high level policy decision regarding the scarce allocation of resources. The record indicates that the decision to entrust the vehicle to Sergeant Davis was nothing more than a lower-level operational decision.[17] Thus, *Taylor* is entirely inapposite.

Finally, *Boyle v. United Technologies Corp.*, 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988) provides this Court little guidance. In *Boyle*, the Supreme Court addressed the discretionary function exception only in the context of a possible conflict with state law. *Id.* 108 S.Ct. at 2517–18. The Supreme Court, however, did not decide the case under this statutory provision. *Boyle* related to the scope of liability of private contractors, under state law, for defective military equipment.

## IV. CONCLUSION

The Court holds that all plaintiffs have established a prima facie case of negligence of the United States to warrant possible recovery under the Federal Tort Claims Act. Furthermore, the Court rules that Sergeant Davis' intoxicated condition did not remove him from the scope of his government employment as a matter of law. Consequently, the Court denies the United States' motion to dismiss, or alternatively, for summary judgment against the negligence claims.

The Court holds that the discretionary function exception does not shield the Government from liability against the negligent entrustment claim. Therefore, the United States' motion for summary judgment on this claim is denied.

An Order shall be entered in accordance with this Opinion.

---

**17.** Interestingly enough, the United States criticizes plaintiff Kehnasts' distinction between "planning level" and "operational level" decisions. Reply Brief of United States at 11. However, the authority the United States relies upon refers to essentially the same analysis. *See Taylor,* 668 F.Supp. at 1305 (noting that "operational mismanagement" is outside scope of § 2680(a)).