967 F.2d 929
 Irwin SCHROB; and Barbara L. Schrob, his wife; and Matawan
Building Supplies Corporation
v.
James CATTERSON, Individually and in his capacity as
Assistant United States Attorney for the Eastern District of
New York; David Toracinta, Individually and in his capacity
as a Special Agent of the Drug Enforcement Administration;
John M. Peluso, Individually and in his capacity as a
Special Agent of the Drug Enforcement Administration; U.S.
Department of Justice--United States Attorney; U.S.
Department of Justice--Drug Enforcement Administration;
John Does 1 through 20; and Jane Does 1 through 20, both
individually and in their capacities as supervisory
personnel over the above identified individual defendants or
as persons, presently unknown to plaintiffs, who
participated in the acts and/or omissions alleged in this
complaint; and Joseph V. Zarrelli, both individually and in
his capacity as Agent/Informer of the United States law
enforcement agencies,
James Catterson, David Toracinta, and John Peluso, Appellants.
 No. 91-5669.
 United States Court of Appeals, Third Circuit.
 Submitted under Third Circuit Rule 12(6),
 June 18, 1992.
Decided June 29, 1992.
 
 Stuart M. Gerson, Asst. Atty. Gen., Michael Chertoff, U.S. Atty., Barbara L. Herwig, Richard A. Olderman, Attys., Appellate Staff, Civ. Div., Dept. of Justice, and Nancy R. Gaines, Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for appellants.
 Robert P. Zoller, Janyce M. Wilson, and Mark D. Miller, Hannoch Weisman, P.C., Roseland, N.J., for appellees.
 Before: GREENBERG and NYGAARD, Circuit Judges, and POLLAK, District Judge.*
 OPINION OF THE COURT
 GREENBERG, Circuit Judge.
 
 I. FACTUAL AND PROCEDURAL HISTORY
 
 1
 This matter is before the court on an appeal by three federal officers from an order denying a motion to substitute the United States as a defendant with respect to certain claims in the complaint in this action. Although the case was previously before us in Schrob v. Catterson, 948 F.2d 1402, 1405-06 (3d Cir.1991) (Schrob I ), for an understanding of the issues now presented it is necessary that we set forth the factual and procedural background at some length.
 
 A. Factual Background
 
 2
 The case arises from the seizure by the United States of the assets of the Matawan Building Supplies Corporation (MBS).[1] When MBS was incorporated in New Jersey in October 1984, it was owned equally by appellee Irwin Schrob, Frank J. Esposito, and Joseph V. Zarrelli. At some point a dispute arose among the owners which resulted in Zarrelli leaving the business and filing suit against MBS, Schrob, and Esposito. This action was resolved, however, in a settlement which resulted in Schrob and Esposito each becoming 50% owners of MBS.
 
 
 3
 Following the settlement Zarelli contacted agents of the Drug Enforcement Administration, including appellants David Toracinta and John Peluso, to give them information regarding Esposito. As a result, the agents began an investigation which eventually led to Esposito's indictment for tax evasion and conspiracy to distribute narcotics. But neither Schrob nor MBS was ever investigated or implicated in any wrongdoing during the Government's investigation of Esposito.
 
 
 4
 Nevertheless, on January 4, 1988, appellant James Catterson, an Assistant United States Attorney, filed an in rem complaint on behalf of the Government in the United States District Court for the Eastern District of New York seeking civil forfeiture of certain real and personal property of MBS and Schrob pursuant to 21 U.S.C. § 881(a). The complaint, however, though indicating that Esposito was only one of three partners of MBS, did not contain any allegations of illegal activity by Schrob or MBS. Furthermore, though the complaint indicated that Esposito had engaged in drug transactions, it did not allege that he contributed any drug-related funds to MBS.
 
 
 5
 On January 5, 1988, pursuant to the in rem complaint, Catterson made an ex parte application for the issuance of a warrant directing the United States marshal to seize the property of MBS.[2] At a hearing on the application the Eastern District Court queried Catterson about the criminal involvement of Esposito's partners, without specifically referring to Schrob or MBS, in the following colloquy:
 
 
 6
 THE COURT: ... Am I correct that two of Mr. Esposito's partners had been indicted or convicted?
 
 
 7
 MR. CATTERSON: That is correct.
 
 
 8
 THE COURT: On what basis do I levy on the property owned by him if there are no charges against him?
 
 
 9
 MR. CATTERSON: A criminal complaint has been brought in this district and Mr. Pileggi is expecting to return an indictment in the near future--obtain an indictment in the near future.
 
 
 10
 It's our position once a criminal prosecution is commenced, the court has the power to attach property in other districts.
 
 
 11
 Id. at 15.
 
 
 12
 The court then issued the warrant against MBS and Schrob's interest in the company in reliance on these statements.[3]
 
 
 13
 Notwithstanding Catterson's representations, the Government only filed a criminal complaint against Esposito. Moreover, neither Schrob nor MBS was named as a co-conspirator in the complaint, nor was either the subject of any criminal investigation. While Schrob alleges that Catterson intentionally misled the court at the ex parte hearing, Catterson contends that he misunderstood the court's question and believed it was referring to Esposito's partners in other ventures who had been indicted.
 
 
 14
 On January 5, 1988, approximately 30 agents of the United States marshal seized all of the shares and property of MBS. This was not a gentle process, as MBS's customers and certain employees were directed to leave the premises, and some key employees were fired. MBS's bank accounts were seized and frozen, and its computer was accessed and the access code changed. Furthermore, the locks on the property were changed. As a result of this seizure, MBS's normal operations ceased. These events did not go unnoticed by the public and in fact they were reported in a newspaper article.
 
 
 15
 The following day representatives of Schrob and MBS met with Catterson to demonstrate that Schrob's investment was legitimate and to show that Esposito had capitalized only one-third of the business. On January 7, 1988, Catterson agreed "in principle" to return control of the business to Schrob but Schrob alleges that Catterson made unreasonable demands on him such as imposing fiscal, accounting and other restrictions on the business. Additionally, Schrob states that Catterson demanded a release from personal liability for his actions. At a subsequent hearing, the Eastern District Court made it clear that it would not have issued the warrant had it known that Esposito was the only owner of MBS implicated in the indictment. Furthermore, the court suggested that Schrob might have a cause of action for Catterson's conduct.
 
 B. Procedural Background
 
 16
 As a result of these events, Schrob, his wife Barbara, and MBS[4] filed this action in the District of New Jersey against Catterson and DEA agents Toracinta and Peluso alleging various constitutional claims under Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), as well as claims under the common law and Federal Tort Claims Act, (FTCA) (see 28 U.S.C. § 1346(b)). In addition, Schrob asserted a claim under 21 U.S.C. § 881, the section invoked by the Government in the forfeiture action. As required by the FTCA, Schrob filed administrative claims with the Department of Justice against Catterson and the DEA agents, but no action was taken on the claim against Catterson and the claims against the agents were rejected. Thereafter, Schrob amended his complaint to add claims against the DEA and the Department of Justice.
 
 
 17
 While Schrob's complaint naturally focuses on the allegation that Catterson misrepresented the facts to the court when he sought the warrants at the ex parte hearing, Schrob also alleges that the appellants wrongfully: (1) failed to conduct a diligent investigation to determine whether the assets seized were subject to forfeiture; (2) violated the Federal Rules of Civil Procedure governing in rem actions; (3) failed to disclose to the court a relevant decision denying the same relief in a related proceeding; (4) obtained the warrant without probable cause; (5) delayed restoring control of MBS to Schrob; (6) demanded a personal release as a condition of returning MBS; (7) made false statements to the press and to the public with respect to the plaintiffs; (8) interfered with the plaintiffs' personal and financial relationships; (9) terminated MBS employees; and (10) mismanaged MBS.
 
 
 18
 On September 28, 1990, the appellants filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) on grounds of qualified and absolute immunity and at that time pursuant to 28 U.S.C. § 2679(d)(1) they also sought substitution of the United States as the defendant with respect to the common law tort claims.[5] That section provides that, upon certification of the Attorney General that the defendant employee was acting within the scope of employment at the time of the incident giving rise to the claim, the United States shall be substituted as a party in place of the employee. See generally, Melo v. Hafer, 912 F.2d 628, 639-42 (3d Cir.1990), aff'd on other grounds, --- U.S. ----, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).
 
 
 19
 On October 22, 1990, in an oral ruling, the district court partially dismissed the Bivens claims as well as the claim under 21 U.S.C. § 881, but denied the remainder of the motion. On December 21, 1990, the appellants filed an appeal from the court's denial of absolute and qualified immunity. On November 15, 1991, in Schrob I we reversed as to some of the claims against Catterson on the ground that he is entitled to absolute prosecutorial immunity for his actions in initiating the in rem proceeding, in seeking the seizure warrant, and in making his statements before the Eastern District Court. 948 F.2d at 1407-17. However, we ruled that the record was insufficient for us to make a determination as to whether immunity was available for his actions after the seizure, and we concluded that the record was also insufficient for us to determine whether immunity was available to the agents. Id. at 1417-22. Accordingly, we remanded for a determination of whether the appellants were entitled to qualified or statutory immunity as to all of the remaining claims. Id. at 1422.
 
 
 20
 The district court's disposition of the substitution motion on October 22, 1990, is not completely clear.[6] According to Schrob, "[b]oth aspects [the motion to dismiss and the motion for substitution] of [the government's] motion were denied without prejudice on October 22, 1990." Nevertheless, the court said that it was granting the motion to substitute but noted that, since under Melo v. Hafer it was required to review the scope of employment certification, it would permit Schrob to move immediately to vacate that ruling. However, the court also determined that further fact finding was necessary before it could resolve either motion. Thus, by permitting limited and expedited discovery on the issue of scope of employment, the court apparently intended to grant the motion to substitute and deny without prejudice a motion by Schrob to vacate the order of substitution. Unfortunately, the docket entry is ambiguous on the point, as it merely indicates that the court conducted a hearing on the motion to dismiss which was denied. However, as it is clear that the United States was never formally substituted as a party for the appellants, the motion to substitute was effectively denied.
 
 
 21
 Following the October 22, 1990, hearing, but before we decided Schrob I, the parties encountered a discovery dispute over the scope of employment issue. Consequently, on April 1, 1991, Schrob filed a motion to compel production of documents and, on April 8, 1991, the appellants filed cross-motions for sanctions and to substitute the United States as a defendant on all common law tort claims and simultaneously to dismiss these claims. The district court held oral argument on these motions on May 13, 1991.
 
 
 22
 The appellants essentially argued in the district court that, regardless of whether Catterson was truthful before the Eastern District Court, the information available demonstrated that they were acting within the scope of their employment with respect to the matters in the complaint. The court, however, disagreed, indicating that the motion to substitute was premature. As in its October 22, 1990, ruling, the district court reasoned that, under Melo, the scope certification must be reviewed and that, while the court would accord deference to the certification, the parties must establish a complete factual record for the review.[7] On June 10, 1991, the court issued an order to this effect denying the motion for substitution without prejudice to its renewal after completion of discovery. The appellants then appealed from the June 10, 1991, order, but Schrob has moved to dismiss the appeal. We will grant that motion.
 
 II. ANALYSIS
 A. The Immunity Framework
 
 23
 Congress enacted the Federal Employees Liability Reform and Tort Compensation Act of 1988 (Reform Act), which amended the FTCA, 28 U.S.C. §§ 1346(b), 2671-80, in response to Westfall v. Erwin, 484 U.S. 292, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988), which declined to accord absolute immunity from common law claims to federal Government employees acting in the scope of their employment. The Reform Act restored their absolute immunity by establishing an exclusive remedy against the United States under the FTCA for certain negligent or wrongful acts of federal employees acting within the scope of employment. See United States v. Smith, --- U.S. ----, 111 S.Ct. 1180, 1183-84, 113 L.Ed.2d 134 (1991). Upon certification of the Attorney General that the employee was acting within the scope of employment, the United States is substituted as defendant. 28 U.S.C. § 2679(d)(1). The scope of employment determination is made in accordance with the law of the place where the act or omission occurred. 28 U.S.C. § 1346(b). While the scope certification is conclusive for purposes of removal of a state court action to a district court, see 28 U.S.C. § 2679(d)(2),[8] in Melo v. Hafer we held that the certification is subject to judicial review for purposes of substitution. 912 F.2d at 642.[9] But in Melo we did not indicate the means by which the district courts should make this inquiry. Instead we left it to the "district court[s] ... to decide which factors are relevant to that determination." Id.[10]
 
 
 24
 The appellants maintain that the district court's denial of substitution is immediately appealable under the collateral order doctrine. See Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Under Cohen and its progeny, an order is appealable as a final order under 28 U.S.C. § 1291 if the order: (1) conclusively determines the disputed question; (2) resolves an important issue completely separate from the merits of the action; and (3) is effectively unreviewable on appeal from a final judgment. See, e.g., Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 276, 108 S.Ct. 1133, 1136-37, 99 L.Ed.2d 296 (1988). The Supreme Court has held that the denial of a claim of absolute immunity is immediately appealable. See Nixon v. Fitzgerald, 457 U.S. 731, 741-43, 102 S.Ct. 2690, 2696-98, 73 L.Ed.2d 349 (1982). The appellants argue that, since a denial of absolute immunity is immediately appealable, and the denial of a motion for substitution under the Reform Act is essentially a denial of absolute immunity, it follows that an order denying substitution is immediately appealable.
 
 
 25
 The appellants' argument is not without support as courts have indeed held that an order setting aside the Attorney General's certification is immediately appealable under the collateral order doctrine. See, e.g. Wood v. United States, 956 F.2d 7, 10 (1st Cir.1992). Nevertheless, it is necessary to put the jurisdictional issue in this case into proper perspective by first reviewing the procedure district courts should employ in considering scope certifications. As we have noted above, the district court in this case determined that further discovery was required before it could definitively rule on the substitution motion, and therefore denied the motion without prejudice pending completion of further discovery.
 
 
 26
 The courts of appeals are beginning to formulate a procedure for reviewing scope certifications. Initially, when the Government or the defendant moves for substitution, the Attorney General's certification, although subject to judicial review, is prima facie evidence that the employee's challenged conduct was within the scope of employment. Brown v. Armstrong, 949 F.2d 1007, 1012 (8th Cir.1991); S.J. & W. Ranch, Inc. v. Lehtinen, 913 F.2d 1538, 1543 (11th Cir.1990), amended, 924 F.2d 1555 (11th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 62, 116 L.Ed.2d 37 (1991). If the matter is disputed, the burden then shifts to the plaintiff, who must come forward with specific facts rebutting the certification. Brown, 949 F.2d at 1012; Hamrick v. Franklin, 931 F.2d 1209, 1211 (7th Cir.1991); Lehtinen, 913 F.2d at 1543. While the courts have engaged in limited fact finding for the review, it has been recognized that a jury trial on the issue would frustrate Congress' intent to "protect federal employees from the uncertain and intimidating task of defending suits that challenge conduct within the scope of their employ." Brown, 949 F.2d at 1011. In furtherance of this principle, the court in Brown determined that, because prior to Westfall questions of official immunity were resolved through summary judgment or dismissal early in the case, challenges to the scope certification "must be resolved before trial, as soon after the motion for substitution as practicable, even if an evidentiary hearing is needed to resolve relevant fact disputes." Id. at 1012 (footnote omitted).
 
 
 27
 In Wood v. United States the plaintiff brought an action against an officer of the United States Army for sexual harassment and assault and battery. The Attorney General certified that the defendant was acting within the scope of his employment. Nevertheless, the district court granted the plaintiff's motion to set aside the certification whereupon the Government filed an appeal. 956 F.2d at 9-10. In reviewing the certification, the district court considered the pleadings and various verified and non-verified documents. On appeal, the defendant contended that the district court should have conducted an evidentiary hearing to determine whether the acts alleged actually occurred. Id. at 11. Although the appellate court held that a hearing was not required and affirmed the order of the district court, it recognized that sometimes a hearing may be required, albeit in limited circumstances:
 
 
 28
 [I]n some instances an independent hearing may be required to determine whether an act is within the 'scope of employment' for Westfall Act purposes.... However, such a hearing is required only in those special rare circumstances where there is a factual dispute which would decide the scope of employment issue, as the crux of the certification dispute, even though it is incidentally coextensive with the merits of the case.
 
 
 29
 Id. at 11-12.
 
 
 30
 In Forrest City Machine Works, Inc. v. United States, 953 F.2d 1086 (8th Cir.1992), the court held that, where the plaintiffs did not come forward with any evidence contradicting the certification and the Government's supporting exhibits, the district court did not err in denying the plaintiffs' requests for discovery prior to review of the certification. 953 F.2d at 1088.[11] Similarly, in Woods v. McGuire, 954 F.2d 388 (6th Cir.1992), the court held that the district court did not abuse its discretion in declining to grant the plaintiff additional time for discovery, since ample time had been provided. Further, discovery had already taken place, including the deposition of two of the defendants. Id. at 391. It is thus implicit in both Forrest City and Woods v. McGuire that pretrial discovery and a hearing may be required to resolve the scope of employment issue. Cf. Snodgrass v. United States, 957 F.2d 482, 487 (7th Cir.1992) (defendant claiming to have been within the scope of his employment at the time of an accident not entitled to hearing where the Attorney General refuses to certify that he was acting within the scope of employment, at least where there is no factual dispute).
 
 
 31
 Thus, inasmuch as most courts of appeals, including this court in Melo, agree that scope certifications are subject to judicial review, it is not surprising that the courts have also recognized that a limited amount of fact finding is necessary for this task. This undoubtedly requires an opportunity for limited discovery, and, if necessary, an evidentiary hearing. The difficulty lies in balancing the need for a meaningful review of the scope certification with the need to protect federal employees from burdensome discovery. To this end, although a definitive procedure has not emerged governing the review of scope certifications, the following principles have emerged from a synthesis of the cases addressing this issue.
 
 
 32
 The scope certification is prima facie evidence that the employee's challenged conduct occurred within the scope of employment, but it is not conclusive. Thus, a plaintiff challenging the certification has the burden of coming forward with specific facts rebutting it. If the facts can be determined without an evidentiary hearing, the court can rule on a pretrial motion to substitute or to set aside the substitution based on the certification, pleadings, documentary evidence, and affidavits. In the event that a substitution is set aside, the defendant may probably appeal under the collateral order doctrine.
 
 
 33
 On the other hand, if there is a genuine issue of fact material to the scope of employment question, the district court should permit discovery and conduct a hearing, if necessary. But the district court should ensure that both the discovery and the hearing are circumscribed as narrowly as possible, although these are matters within its discretion. See Country Floors, Inc. v. Gepner and Ford, 930 F.2d 1056, 1062 (3d Cir.1991) ("[r]eview of questions ... concerning the scope or opportunity for discovery is for abuse of discretion").[12] We believe that these procedures are appropriate, for while absolute immunity generally confers immunity from suit and not just from liability, immunity resulting from substitution arises only after there has been a judicial determination that the defendant was acting within the scope of employment. Thus, the mere status of being a federal employee does not guarantee total immunity from the judicial process.[13] Cf. Forrester v. White, 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988) (taking functional approach to judicial immunity).
 
 B. Finality
 1. Denial of Substitution Without Prejudice
 
 34
 In Cohen, the Supreme Court observed that 28 U.S.C. § 1291 should be given a "practical rather than technical construction." Cohen, 337 U.S. at 546, 69 S.Ct. at 1226; accord, Shapiro v. UJB Financial Corp., 964 F.2d 272, 278 (3d Cir.1992). As we have indicated, under the collateral order doctrine an order denying immunity may constitute a "final" order within the meaning of 28 U.S.C. § 1291 and thus be immediately appealable. Because entitlement to immunity "is an immunity from suit rather than a mere defense to liability ..., it is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985) (emphasis in original). The various forms of immunity, including executive, legislative, judicial, and prosecutorial, reflect a policy that the public is better served if certain public officials exercise their discretionary duties with independence and without fear of the burdens of a civil suit for damages. See generally id. at 525-26, 105 S.Ct. at 2815; Nixon, 457 U.S. at 744-46, 102 S.Ct. at 2698-99; Harlow v. Fitzgerald, 457 U.S. 800, 806-08, 102 S.Ct. 2727, 2732-33, 73 L.Ed.2d 396 (1982). "[E]ven such pretrial matters as discovery are to be avoided if possible, as '[i]nquiries of this kind can be peculiarly disruptive of effective government.' " Mitchell, 472 U.S. at 526, 105 S.Ct. at 2815 (quoting Harlow, 457 U.S. at 817, 102 S.Ct. at 2737-38).
 
 
 35
 While an order setting aside the Attorney General's certification may be immediately appealable under these principles, see, e.g., Wood v. United States, 956 F.2d at 10, the issue in this case is whether an immediate appeal similarly lies for an order denying a motion to substitute without prejudice, i.e., in anticipation of further discovery. We must thus determine whether such an order satisfies the first prong of the Cohen test: does it conclusively determine the disputed question? The appellants conspicuously skirt the issue with the following conclusory statement in their reply brief: "The first prong of the Cohen test ... ensures that the matter is ripe for appeal. This prong is easily met here, for the district court denied the government's motion for substitution under the Reform Act." But the court did so without prejudice.
 
 
 36
 In discussing the "conclusiveness" prong of Cohen in the context of qualified immunity, the Supreme Court has held that a denial of qualified immunity may be considered
 
 
 37
 'conclusive' in either of two respects. In some cases, it may represent the trial court's conclusion that even if the facts are as asserted by the defendant, the defendant's actions ... are ... not within the scope of qualified immunity. In such a case, there will be nothing in the subsequent course of proceedings in the district court that can alter the court's conclusion that the defendant is not immune. Alternatively, the trial judge may rule only that if the facts are as asserted by the plaintiff, the defendant is not immune. At trial, the plaintiff may not succeed in proving his version of the facts, and the defendant may thus escape liability. Even so, the court's denial of summary judgment finally and conclusively determines the defendant's claim of right not to stand trial on the plaintiff's allegations, and because '[t]here are simply no further steps that can be taken in the District Court to avoid the trial the defendant maintains is barred,' it is apparent that 'Cohen's threshold requirement of a fully consummated decision is satisfied' in such a case.
 
 
 38
 Mitchell, 472 U.S. at 527, 105 S.Ct. at 2816 (emphasis in original) (quoting Abney v. United States, 431 U.S. 651, 659, 97 S.Ct. 2034, 2040, 52 L.Ed.2d 651 (1977)).
 
 
 39
 Clearly, the district court's order in this case was not "conclusive" in the sense that "there will be nothing in the subsequent course of proceedings in the district court that can alter the court's conclusion that the defendant[s] [were not acting within the scope of employment and thus are] not immune." The district court made clear both at oral argument and in its subsequent order, that its ruling denying the motion to substitute was tentative, and that it would subsequently conduct a hearing on a more fully developed record to determine conclusively the scope of employment issue. Cf. Praxis Properties Inc. v. Colonial Savings Bank, 947 F.2d 49, 56 (3d Cir.1991) ("We can perceive of no circumstances under which the district court would revisit the legal question that [the appellant] now appeals to this court.")
 
 
 40
 Moreover, the district court's ruling does not "conclusively determine[ ] the defendant's claim of right not to stand trial on the plaintiff's allegations," Mitchell, 472 U.S. at 527, 105 S.Ct. at 2816 (emphasis in original), for we cannot conclude that " '[t]here are simply no further steps that can be taken in the District Court to avoid the trial the defendant maintains is barred....' " Id. (quoting Abney v. United States, 431 U.S. at 659, 97 S.Ct. at 2040). The district court has not mandated that the appellants stand trial on the claims for which substitution has been sought. Rather, it ordered the appellants to comply with pretrial discovery so that the court can conduct a hearing--also pretrial--in order to determine whether the United States should be substituted, and therefore whether the appellants must ultimately stand trial.
 
 
 41
 To be sure, the policy underlying the grant of immunity extends to pretrial matters as well and, as the Court noted in Mitchell, "such pretrial matters as discovery are to be avoided if possible...." Id. at 526, 105 S.Ct. at 2815 (emphasis added). However, the finality aspect of the collateral order doctrine is not satisfied by the conclusion that the district court's ruling conclusively determined the immunity issue to the extent that it requires the appellants to engage in such limited discovery proceedings. We can hardly hold otherwise, for a contrary conclusion would create a basis for immediate appeal from a denial of substitution pending even minimal discovery. As we have discussed above, even a federal employee entitled to immunity as a result of substitution under the Reform Act must submit to limited discovery where it is necessary for the district court to establish whether the employee acted within the scope of employment.
 
 
 42
 Indeed, the Supreme Court has recognized that some discovery might be necessary to resolve a claim of immunity, although again in the context of qualified rather than absolute immunity. In Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), the Court confronted the conflict between the need for discovery in order to resolve the immunity issue, and the adverse consequences of subjecting public officials to broad-ranging discovery--the avoidance of which is the very reason immunity was granted in the first place. Id. at 646 n. 6, 107 S.Ct. at 3042-43 n. 6. The Court "emphasized that qualified immunity questions should be resolved at the earliest possible stage of the litigation." Id. Accordingly, the Court instructed that the district court should first determine whether the plaintiff alleged that the defendant took actions that a reasonable officer could have believed lawful.[14] If so, the defendant is entitled to immunity prior to discovery. On the other hand, if the plaintiff's allegations are sufficient as a matter of law to avoid an immunity defense, but the defendant denies engaging in the alleged conduct, "then discovery may be necessary before [the defendant's] motion for summary judgment on qualified immunity grounds can be resolved." Id.[15] Thus, the Court of Appeals for the Second Circuit has held, "[w]here the applicability of the immunity cannot be decided from the face of the pleadings but requires some discovery, the denial of a motion to dismiss on the immunity ground is not appealable prior to discovery." United States v. Yonkers Bd. of Educ., 893 F.2d 498, 503 (2d Cir.1990) (Eleventh Amendment immunity).
 
 
 43
 Similarly, in Mitchell, the Court held that a denial of a claim of qualified immunity is appealable "to the extent that it turns on an issue of law." 472 U.S. at 530, 105 S.Ct. at 2817. Thus, the courts of appeals have held that a district court's order denying summary judgment on the ground of qualified immunity is immediately appealable only where the district court's decision is premised upon purely legal, rather than factual, issues. See Henry v. Perry, 866 F.2d 657, 659 (3d Cir.1989) (Sloviter, J., concurring); Chinchello v. Fenton, 805 F.2d 126, 130-31 (3d Cir.1986) (dictum). See also Cartier v. Lussier, 955 F.2d 841, 844 (2d Cir.1992); DiMarco v. Rome Hosp., 952 F.2d 661, 665 (2d Cir.1992); P.C. v. McLaughlin, 913 F.2d 1033, 1039 (2d Cir.1990); Peppers v. Coates, 887 F.2d 1493, 1497 (11th Cir.1989); Feagley v. Waddill, 868 F.2d 1437, 1439 (5th Cir.1989); Velasquez v. Senko, 813 F.2d 1509, 1511 (9th Cir.1987). But see Craft v. Wipf, 810 F.2d 170, 171-73 (8th Cir.1987).
 
 
 44
 Other courts have applied this reasoning to denials of absolute immunity, and have similarly held that, where "the availability of [absolute] immunity cannot ... be determined as a matter of law, [the court of appeals] lack[s] jurisdiction over th[e] interlocutory appeal and [is] obliged to dismiss so that the matter may proceed in the trial court." White v. Frank, 855 F.2d 956, 962 (2d Cir.1988); accord Stem v. Ahearn, 908 F.2d 1, 3 (5th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 788, 112 L.Ed.2d 850 (1991); United States v. Yonkers Bd. of Educ., 893 F.2d at 502; Compania Mexicana De Aviacion v. United States Dist. Court, 859 F.2d 1354, 1358 (9th Cir.1988); Group Health Inc. v. Blue Cross Ass'n, 793 F.2d 491, 497 (2d Cir.1986), cert. denied, 480 U.S. 930, 107 S.Ct. 1566, 94 L.Ed.2d 758 (1987); Evans v. Dillahunty, 711 F.2d 828, 830 (8th Cir.1983). Consequently, if an order denying a motion to dismiss based on the ground of absolute or qualified immunity is not immediately appealable when the denial is predicated on the existence of unresolved issues of fact, then a motion to substitute (which is akin to a motion to dismiss) denied without prejudice because of unresolved issues of fact cannot be immediately appealable. Cf. Borelli v. Reading, 532 F.2d 950 (3d Cir.1976) (order dismissing complaint without prejudice usually not appealable).
 
 2. The Other Damages Claims
 
 45
 There is another, perhaps even stronger reason for dismissing this appeal. Inasmuch as the immunity resulting from substitution under the Reform Act does not apply to actions for violations of the United States Constitution or federal statutes under which such action against an individual is otherwise authorized, 28 U.S.C. § 2679(b)(2), the immunity resulting from substitution under the Reform Act could apply only to Schrob's common law tort claims. Even if the district court had granted the motion to substitute and then dismissed these claims (or, alternatively, even if we asserted jurisdiction over this appeal and mandated the same result), the appellants still must go to trial on the Bivens claims, unless the district court dismisses these claims on grounds of absolute or qualified immunity or unless the appellants are entitled to a pretrial disposition on some other basis. In Prisco v. U.S. Dep't of Justice, 851 F.2d 93 (3d Cir.1988), cert. denied, 490 U.S. 1089, 109 S.Ct. 2428, 104 L.Ed.2d 985 (1989), we held that a district court's denial of a motion for summary judgment based on qualified immunity is not immediately appealable where claims for prospective injunctive relief (which are not subject to immunity) remained pending. In language directly applicable here we held:
 
 
 46
 It is clear, therefore, that a suit seeking both prospective relief and money damages will not end for a party successfully asserting a defense of either absolute or qualified immunity. That being the case, it is necessary to consider the rationale for the Mitchell v. Forsyth- Harlow v. Fitzgerald exception to the final judgment rule. That rationale is that the collateral interest being protected is the freedom from having to defend a lawsuit; this interest, like a claim of double jeopardy, is lost beyond recall even if the defendant prevails at trial.... That rationale has only the slightest application to a case involving claims for both prospective relief and money damages. The part of the case that will determine the liability must go forward in any event. The marginal benefit to a governmental official from an interlocutory review of a ruling that proof of damages should not be heard is so slight that it cannot outweigh the systemic harms from permitting piecemeal interlocutory review of discrete issues in a case which, even against that official, will be ongoing. We hold, therefore, that in an action in which claims for prospective relief remain pending, a party against whom they remain pending may not appeal from the denial of a motion for summary judgment on immunity grounds.
 
 
 47
 Id. at 96 (emphasis in original) (footnote omitted).
 
 
 48
 This case presents an even stronger justification for the result in Prisco than in Prisco itself, as Schrob in all his pending claims seeks to hold the defendants personally liable for damages. Moreover, all of the claims asserted by Schrob arise from the same core set of facts, so discovery is not likely to be any less burdensome if some of the claims are dismissed. Arguably, therefore, Prisco cannot fairly be distinguished and directly controls our result.
 
 
 49
 We recognize that we may now be alone in holding that orders denying qualified immunity in cases seeking both damages and equitable relief are not immediately appealable.[16] While in Mitchell, the Court expressly left open the question of whether such an order could be immediately appealed, 472 U.S. at 519 n. 5, 105 S.Ct. at 2812 n. 5, virtually every other court of appeals that has addressed the issue has held contrary to Prisco. See, e.g. DiMartini v. Ferrin, 889 F.2d 922, 924-25 (9th Cir.1989), amended on other grounds, 906 F.2d 465 (9th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 2796, 115 L.Ed.2d 970 (1991); Marx v. Gumbinner, 855 F.2d 783, 787-88 (11th Cir.1988); Giacalone v. Abrams, 850 F.2d 79, 84-85 (2d Cir.1988); Young v. Lynch, 846 F.2d 960, 961-62 (4th Cir.1988); DeVargas v. Mason & Hanger-Silas Mason Co., 844 F.2d 714, 717-18 (10th Cir.1988); Scott v. Lacy, 811 F.2d 1153 (7th Cir.1987); Kennedy v. Cleveland, 797 F.2d 297, 305-06 (6th Cir.1986), cert. denied, 479 U.S. 1103, 107 S.Ct. 1334 (1987); De Abadia v. Izquierdo Mora, 792 F.2d 1187, 1190 (1st Cir.1986); Tubbesing v. Arnold, 742 F.2d 401, 403-04 (8th Cir.1984).
 
 
 50
 These courts have criticized Prisco for qualitatively equating the burdens associated with defending against a suit for money damages with the burdens associated with defending a suit for injunctive relief. A defendant in a suit for money damages is liable in an individual personal capacity. By contrast, a defendant who has lost a claim for injunctive relief will simply be ordered to take or refrain from action in an official capacity with any expenses charged to the public. Marx, 855 F.2d at 787-88.[17] Additionally, these courts fear that plaintiffs can easily circumvent a defendant's right to immediate appeal simply by adding a claim for equitable relief. See Scott, 811 F.2d at 1154. But notwithstanding these strong arguments, Prisco is binding on this panel.
 
 
 51
 We also point out that the reasons given by the other courts for rejecting Prisco are not applicable here. Since constitutional claims would survive the proposed substitution, the first criticism of the Prisco approach, namely that there is a qualitative difference between damages and injunction claims, is not relevant here. Additionally, fear that a plaintiff may add an equitable claim to a damage claim to preclude an immediate appeal when qualified immunity is denied is of no concern in this case. We also point out that there is nothing in the record to suggest that Schrob has acted in bad faith in asserting damage claims not subject to substitution, for we cannot say that the Bivens claims are insubstantial in this case. Thus, even if we were not bound by Prisco, this case would surely not be an appropriate vehicle to reexamine that precedent.
 
 
 52
 Cases from the Court of Appeals for the Eleventh Circuit help us focus on the multiple damage claims problem. Initially that court in Schopler v. Bliss, 903 F.2d 1373 (11th Cir.1990), stated: "If we find that appellants must stand trial for at least some of their alleged misdeeds under at least one cause of action for damages, then the reasons for allowing an immediate appeal disappear, and we must dismiss the appeal of the order rejecting claims of immunity for lack of appellate jurisdiction." Id. at 1378. Recently, however, the court en banc, squarely held that "government officials continue to be entitled to interlocutory appeal when a civil rights plaintiff attaches other counts to which the official is not immune, or when the same official acknowledges that at least some of the plaintiff's allegations do make out violations of clearly established law." Green v. Brantley, 941 F.2d 1146, 1152 (11th Cir.1991) (en banc).
 
 
 53
 The court in Green reasoned that, even where certain claims remain, the defendant's litigation burdens are lessened when some of them are dismissed. Id. at 1149. If the defendant is successful on appeal in dismissing some of the claims, moreover, the plaintiffs may voluntarily withdraw or settle the remaining claims. Id. If there is a trial, the duration will likely be shortened, the issues simplified, and the focus narrowed, thus resulting in reduced attorney's fees. Id. at 1149-50. Additionally, the court noted the possibility that the remaining claims may be for substantially less damages, or may be covered by insurance. Id. at 1150. Further, "the stigma of facing suit for negligence (for example) probably is, and ought to be, less than that associated with having allegedly violated someone's civil rights. ... Moreover, the plaintiff's constitutional claim may be the only federal claim in the lawsuit. If the federal claim is dismissed because of qualified immunity, the state-law claims may have no place in federal court." Id. Additionally, the court determined that, while these considerations implicate whether the entitlement to qualified immunity is "effectively lost" if the defendant must go to trial, the other two Cohen factors were satisfied--that the order conclusively determines the disputed question, and is separable from the merits. Id. at 1151-52. See also Musso v. Hourigan, 836 F.2d 736, 742 n. 1 (2d Cir.1988) (permitting interlocutory appeal of one claim even though plaintiff may have to go to trial on another).
 
 
 54
 The dissent in Green argued that the majority gave short shrift to the importance of the final judgment rule, and stressed the narrowness of the collateral order doctrine. 941 F.2d at 1154-56 (Johnson, J., dissenting). Additionally, the dissent persuasively argued that the majority greatly overestimated the benefits of permitting an immediate appeal, since the same evidence needed to prove the claim from which the defendant may be immune is also needed to prove the claims that must go forward in any event:
 
 
 55
 Consequently, even if a panel of this Court reverses the district court's denial of qualified immunity as to the property interest claim, that reversal would have practically no effect on the course of the subsequent litigation. If the 'burdens of litigation' were lessened for the defendants, it would be only imperceptibly so. It is difficult to imagine that discovery would be any more limited, that the duration of trial would be any shorter, that attorneys' fees would be reduced, that the embarrassment of the legal process would be decreased, or that the distraction from official duties would be any less intense. More importantly, the defendants would remain potentially liable in money damages. The many benefits of a successful assertion of qualified immunity simply would not inure to the defendants in this case.
 
 
 56
 Id. at 1153-54 (footnote omitted).
 
 
 57
 This reasoning is particularly applicable here.[18] Schrob's complaint alleges numerous theories of recovery, but all stem from the same common nucleus of fact. Moreover, it appears that the Bivens claims in this case are, as Schrob alleges, the "primary thrust" of his complaint. Consequently, while the reasoning of Prisco may be debatable, little would be gained by permitting immediate appeal of the denial of immunity of some claims where other claims for money damages remain. In these circumstances, the justifications for permitting immediate appeals of denials of immunity are simply not compelling, and the benefits discussed by the majority in Green would be illusory. We simply cannot fit this case within the narrow range of appeals permitted under the collateral order doctrine. Furthermore, while there are valid reasons for permitting early appeals of immunity questions, this case clearly demonstrates that there is a price to be paid in allowing such appeals, for here Schrob filed his suit well over two years ago but has not had his trial. Thus, there is a basis for Schrob's statement in his brief that the appellants have "done everything possible to avoid open discovery and to delay the normal progress of his matter before the district court ... and have achieved some measure of success to date."
 
 III. CONCLUSION
 
 58
 In view of the aforesaid the appeal will be dismissed.
 
 
 
 *
 Honorable Louis H. Pollak, United States District Judge for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 For purposes of this appeal we recite the facts as set forth in the second amended complaint and in Schrob I
 
 
 [2]
 The warrant also directed the seizure of Schrob's property and property the Government believed to be owned by MBS but which it did not in fact own. We note that the complaint in this case refers to warrants in the plural, thus suggesting that there was more than one. As a matter of convenience we will only refer to a singular warrant
 
 
 [3]
 In Schrob I we indicated that the hearing was before a magistrate judge who issued the warrant. 948 F.2d at 1406. In fact it was before a district judge
 
 
 [4]
 Barbara Schrob asserts a claim for loss of consortium. In Schrob I, we noted that MBS's claim was stayed as a result of a bankruptcy filing. 948 F.2d at 1404 n. 1. As far as we are aware this is still the case
 
 
 [5]
 It appears that the substitution was sought by the Government on behalf of the appellants but as a matter of convenience we refer to the motion as if filed by the appellants
 
 
 [6]
 The district court did not file an official order, but instead incorporated the transcript as its order. See Schrob I, 948 F.2d at 1407
 
 
 [7]
 The court stated:
 I read Melo as being a mandate to the District Court to make a factual inquiry into the circumstances surrounding the activities that were done by the person presumably in the course of his employment.
 I will, at the time of [the] hearing on the matter, give great deference to the United States' position and certification by the Attorney General. But before that, I'm going to have the parties take full discovery on the underlying facts so they could be presented to me in an appropriate fashion.
 App. at 186.
 
 
 [8]
 Nevertheless, it may well be that a case may be remanded to the state court if it is later determined that the employee had not been acting within the scope of employment. See Snodgrass v. Jones, 957 F.2d 482, 484 (7th Cir.1992)
 
 
 [9]
 This is the view of the majority of courts that have considered the issue. See Brown v. Armstrong, 949 F.2d 1007, 1011-12 (8th Cir.1991); Meridian Int'l Logistics, Inc. v. United States, 939 F.2d 740, 745 (9th Cir.1991); Hamrick v. Franklin, 931 F.2d 1209 (7th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 200, 116 L.Ed.2d 159 (1991); S.J. & W. Ranch, Inc. v. Lehtinen, 913 F.2d 1538 (11th Cir.1990), amended, 924 F.2d 1555 (11th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 62, 116 L.Ed.2d 37 (1991); Nasuti v. Scannell, 906 F.2d 802, 812-13 (1st Cir.1990); Arbour v. Jenkins, 903 F.2d 416 (6th Cir.1990). Contra Mitchell v. Carlson, 896 F.2d 128, 134, 136 (5th Cir.1990); Aviles v. Lutz, 887 F.2d 1046, 1049 (10th Cir.1989)
 
 
 [10]
 As this case illustrates, "[c]oncluding that judicial review is appropriate raises subsidiary but highly significant issues that for the most part have not been addressed in prior cases, such as when the scope-of-employment determination should be made (before or at trial); who should make it (court or jury); and whether any deference should be paid to the Attorney General's certification." Brown v. Armstrong, 949 F.2d 1007, 1011 (8th Cir.1991)
 
 
 [11]
 Further, the court noted that the discovery requests did not relate to the scope of employment question. 953 F.2d at 1088. The court affirmed the district court's holding that the defendant was acting within the scope of her employment
 
 
 [12]
 See also Contractors Ass'n of Eastern Pa. v. Philadelphia, 945 F.2d 1260, 1263 (3d Cir.1991) (review of district court's refusal to postpone action on summary judgment motion is for abuse of discretion)
 
 
 [13]
 We note that the district court indicated several times that it would give the Attorney General's certification "great deference." See, e.g., app. at 186 ("I will, at the time of hearing on this matter, give great deference to the United States' position and certification by the Attorney General."). This deference, however, is not justified, for the certification should be reviewed de novo by the district court. See, e.g., Meridian Int'l Logistics, 939 F.2d at 745; Hamrick, 931 F.2d at 1211; S.J. & W. Ranch, 913 F.2d at 1543; Nasuti, 906 F.2d at 808; see also Donio v. United States, 746 F.Supp. 500, 503-04 (D.N.J.1990)
 
 
 [14]
 Under Harlow v. Fitzgerald, a defendant entitled to qualified immunity is immune unless the challenged actions violated clearly established law. This is a question of law. Thus, the Court in Anderson stated that the district court should first determine whether a reasonable officer could have believed that the actions of which the plaintiff complains were lawful
 
 
 [15]
 The Court added, "[o]f course, any such discovery should be tailored specifically to the question of [the defendant's] qualified immunity." 483 U.S. at 646 n. 6, 107 S.Ct. at 3042-43 n. 6
 
 
 [16]
 In Prisco five judges voted for rehearing in banc
 
 
 [17]
 See also Scott, 811 F.2d at 1153-54, where the court observed:
 As a practical matter, a public official who is a defendant in a suit seeking an injunction is not 'on trial' at all. The suit seeks relief against him in his official capacity; he need not attend the trial, which will be conducted by attorneys representing the governmental body. If he leaves office during the interim, he leaves the case behind and his successor becomes the party. The litigation may leave mental scars, especially if the suit challenges the official's integrity, but this effect does not necessarily depend on the conduct of the trial. A declaration that the official is immune from damages ends the case for that official as a litigant, even though it may not end the case for the body he represents. The 'right not to be tried' pertains to the request for damages alone, for that is the source of the distraction.
 
 
 [18]
 We are not to be understood as adopting the dissent in Green as the law in this circuit. Rather, we refer to the dissent as a reinforcement of Prisco which remains the law of this circuit